(173 App. Div. 482)

### TOWN OF EASTCHESTER v. MT. VERNON TRUST CO.

(Supreme Court, Appellate Division, Second Department.   June 2, 1916.)

1. BANKS AND BANKING ☞119—RELATION BETWEEN BANK AND DEPOSITOR.

   The relation between a bank and its depositor is that of debtor and creditor.

   [Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 289–292; Dec. Dig. ☞119.]

2. BANKS AND BANKING ☞130(2)—NOTICE OF TRUST DEPOSIT.

   The opening of a bank account in the name of the depositor as supervisor of a town distinguished it from a personal account only in that it informed the bank that the moneys did not belong to the supervisor as an individual, but that he held them in trust; the word "supervisor" indicating the depositor's official relation, and therefore the nature of the trust.

   [Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. § 321; Dec. Dig. ☞130(2).]

3. BANKS AND BANKING ☞130(2)—TRUST DEPOSIT—PAYMENT OF CHECKS.

   Where money is deposited in bank subject to check by an individual as supervisor of a town or as trustee, the bank is not obliged in either case, for the purpose of protection in paying checks, to search for the depositor's authority.

   [Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. § 321; Dec. Dig. ☞130(2).]

4. BANKS AND BANKING ☞130(2)—DUTY TO PAY FUNDS ON DEMAND.

   A bank, which does not, upon proper demand, pay out money deposited with it by a township supervisor as such, is subject to action, and cannot plead in defense an interest in the town.

   [Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. § 321; Dec. Dig. ☞130(2).]

5. BANKS AND BANKING ☞130(2)—TRUST FUNDS—PAYMENT TO TRUSTEE.

   Where a town supervisor deposited town funds in bank under an arrangement whereby they might be withdrawn for town purposes by check or draft containing the signature of the supervisor as such, when such supervisor presented such a check, payable to his own order, the bank was not called upon at its peril to delay payment, interrogate the supervisor as to his purposed use of the funds, or suspend payment pending investigation, since, when a check in the form justified by the contract between the parties is presented by a depositor of trust money, the debtor owes no duty on behalf of the beneficiary to scrutinize the demand, or be circumspect, lest his customer is betraying his trust.

   [Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. § 321; Dec. Dig. ☞130(2).]

6. BANKS AND BANKING ☞130(2)—DEPOSIT OF TRUST FUND—MISAPPROPRIATION—NOTICE.

   Where a township supervisor deposited town funds under an arrangement whereby they might be withdrawn by check signed by the supervisor as such, the fact that the supervisor presented for payment many checks to his own order did not charge the bank with notice of the supervisor's intention to misappropriate the trust funds to his own use.

   [Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. § 321; Dec. Dig. ☞130(2).]

Appeal from Special Term, Westchester County.

Action by the Town of Eastchester against the Mt. Vernon Trust Company. From an interlocutory judgment overruling its demurrer

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

to the complaint, defendant appeals. Judgment reversed, and demurrer sustained, with leave to plead over.

Argued before JENKS, P. J., and THOMAS, MILLS, RICH, and PUTNAM, JJ.

I. H. Lehman, of New York City (Harold Nathan and Mortimer Brenner, both of New York City, on the brief), for appellant.

Albert Ritchie, of New York City (William S. Beers, of New Rochelle, on the brief), for respondent.

THOMAS, J.   Between May 16, 1905, and March 2, 1909, the defendant paid to the drawer $69,653.19 upon some 57 checks signed "Henry C. Merritt, Supervisor," and payable to his order. The payee appropriated the money to his own use. Merritt, as the supervisor of the town of Eastchester, the plaintiff, had received the money, and deposited it with defendant in an account opened in the name of Henry C. Merritt, Supervisor, under an arrangement with the depositary whereby the moneys might be deposited and withdrawn for town purposes by checks or drafts which should contain as the signature of the drawer thereof the following: "Henry C. Merritt, Supervisor." The defendant knew that the moneys so deposited and from time to time withdrawn under such arrangement were town funds, and that Merritt had no right to withdraw them for his own use, and that he could legally withdraw them only for the uses and purposes of the town and in conformity with his duties as such supervisor. But without plaintiff's knowledge or consent Merritt did draw and convert the moneys in the manner and to the amount stated, although—I will assume from the complaint, to which there is demurrer—investigation by defendant would have disclosed the purposed misappropriation.

The question is whether the defendant was required to make inquiry. The defendant did not have actual knowledge of the intended conversion. But it is urged that it had constructive notice of it, in that, knowing that Merritt was drawing against public moneys, it honored his checks payable to himself, whereby a personal appropriation by him was signified, and that, even if in a single instance such form of check might have an innocent aspect, repeated use of it changed the complexion of his conduct and gave notice of diversion of the fund to Merritt's personal use. The case should be cleared at once of the considerations that impose liability, where the banker is deemed to participate in a criminal conversion of trust funds. Such instances have arisen under varieties of fact, but it is sufficient to refer to Lowndes v. City National Bank, 82 Conn. 8, 72 Atl. 150, 22 L. R. A. (N. S.) 408, Smith v. Anderson, 57 Hun, 72, 10 N. Y. Supp. 278, Duckett v. National Bank, 86 Md. 403, 38 Atl. 983, 39 L. R. A. 84, 63 Am. St. Rep. 513, and Ward v. City Trust Co., 192 N. Y. 61, 66, 84 N. E. 585. And also are laid from view decisions, in instances related to the class above indicated, where banks have received checks, notes, or securities, that in their form state or imply directions that they be credited or retained for a third person, or raise the question whether the presenter is entitled to personal credit on account of them. Such questions were involved, at least in part,

in First National Bank v. National Broadway Bank, 156 N. Y. 459, 51 N. E. 398, 42 L. R. A. 139; Walker v. State Trust Co., 40 App. Div. 55, 57 N. Y. Supp. 525; Niagara Woolen Co. v. Pacific Bank, 141 App. Div. 265, 126 N. Y. Supp. 890; Safe Deposit & Trust Co. v. Diamond Nat. Bank, 194 Pa. 334, 44 Atl. 1064; Duckett v. Mechanics' Bank, 86 Md. 400, 410, 38 Atl. 983, 39 L. R. A. 84, 63 Am. St. Rep. 513; Walker v. Manhattan Bank (C. C.) 25 Fed. 247; Sims v. U. S. Trust Co. of New York, 103 N. Y. 472, 9 N. E. 605.

And similarly I disregard decisions, so far as they rest on the fact that the depositor is known to be, and is accepted as, the agent, or representative, or trustee, of a third person or a court, and the depositary is informed of the authorized manner of withdrawing deposits, ordained by rules, orders of court, prescribed signatures or countersignatures. Of that class is American Nat. Bank v. Fidelity & Deposit Co., 129 Ga. 126, 58 S. E. 867, 12 Ann. Cas. 666. Nor is the present decision essentially concerned with the rights of third persons to follow trust moneys that the depositor has without right committed to a bank, or after rightful deposit seeks to divert, or which the bank would turn to the personal use of the depositor, or refuses to turn over to the depositor's principal or successor in office. For such discussion reference is had to National Bank v. Insurance Co., 104 U. S. 54, 26 L. Ed. 693; Freeholders of Essex v. Newark Nat. Bank, 48 N. J. Eq. 51, 21 Atl. 185.

[1, 2] Keeping the present discussion within the inquiry whether there was notice of wrongdoing by the depositor that should have moved the defendant to inquiry, I note some familiar rules of law. The relation between the defendant and Merritt was that of debtor and creditor. The opening of the account in the name of "Merritt, Supervisor," distinguished it from a personal account only in that it informed the bank that the moneys did not belong to Merritt as an individual, but that he had them in trust. National Bank v. Insurance Co., 104 U. S. 54, 26 L. Ed. 693. In this instance the word "Supervisor" indicated the depositor's official relation, and therefore the nature of the trust; while, if the deposit of the moneys had been by "Merritt, Trustee," the trust itself would have been wholly undefined, and the depositary would have known only that it did or might exist.

[3, 4] But, in either case, the bank was not obliged, for the purposes of payment, to search for his authority as trustee. Manhattan Savings Institution v. N. Y. National Exchange Bank, 170 N. Y. 58, 67, 62 N. E. 1079, 88 Am. St. Rep. 640; Boone v. Citizens' Savings Bank, 84 N. Y. 83, 86, 38 Am. Rep. 498. The relation of the parties is clear. Merritt, supervisor, had deposited moneys which he officially held. Then the defendant owed him the money, and could and should pay it only to him. Perley v. County of Muskegon, 32 Mich. 132, 136, 20 Am. Rep. 637; Pittsburg v. First Nat. Bank, 230 Pa. 176, 181, 182, 79 Atl. 406. If it did not pay upon proper demand, it was subject to action (Citizens' National Bank v. Importers' & Traders' Bank, 119 N. Y. 195, 23 N. E. 540), and could not plead in defense an interest in the town (Swartwout v. Mechanics' Bank of New York, 5 Denio, 555).

[5] When a check in the form justified by the contract between the parties is presented by a depositor of trust money, the debtor owes no duty in behalf of the beneficiary to scrutinize the demand, or to be circumspect, lest its customer is betraying his trust. Goodwin v. American National Bank, 48 Conn. 550, 567. Its solicitude should be to pay the debt to or upon the proper order of the person to whom it is owing, but not to suspect its customer's integrity or to guard against his doing wrong. Lowndes v. City National Bank, 82 Conn. 8, 72 Atl. 150, 22 L. R. A. (N. S.) 408; Duckett v. Mechanics' Bank, 86 Md. 400, 405, 38 Atl. 983, 39 L. R. A. 84, 63 Am. St. Rep. 513. The duty of a bank touching a trust fund and its duty to be apprehensive for the conduct of its depositor is discussed in Eyrich v. Capital State Bank, 67 Miss. 60, 71–73, 6 South. 615; Munnerlyn v. Augusta Savings Bank, 88 Ga. 333, 14 S. E. 554, 30 Am. St. Rep. 159; Brookhouse v. Union Publishing Co., 73 N. H. 368, 373, 62 Atl. 219, 2 L. R. A. (N. S.) 993, 111 Am. St. Rep. 623, 6 Ann. Cas. 675; Morse on Banks and Banking, § 317. But I gather that, in the absence of knowledge to the contrary, a bank is free to accept its depositor as honest in his purposed use of the money of which by check he demands payment. Freeholders of Essex v. Newark National Bank, 48 N. J. Eq. 53, 21 Atl. 185; National Bank v. Insurance Co., 104 U. S. 54, 63, 64, 26 L. Ed. 693.

In view of such attitude of the depositary to its depositor, although a trustee, and to the trust, it cannot be said that, when Merritt, supervisor, presented a check payable to his own order, the debtor should at its peril halt its creditor, interrogate him as to his purpose, or perchance suspend payment pending investigation. In Lowndes v. National Bank, 82 Conn. 8, 72 Atl. 150, 22 L. R. A. (N. S.) 408, the court, after attaching liability to the bank for devastavit of an account of trust moneys, was painstaking to state:

"This is not to say that a bank undertakes to supervise and safeguard a trust account therein, or comes under the duty of looking after the appropriation of such funds when withdrawn. Such is not the law."

And it decided that a check drawn on trust funds by "Layton, administrator, to Layton individually, was not irregular upon its face."

In Havana Central R. Co. v. Central Trust Co., 204 Fed. 546, 123 C. C. A. 72, L. R. A. 1915B, 715, the decision was that, where the treasurer of the plaintiff drew a check signed, "Havana Central Railroad Company, C. W. Van Voorhis, Treasurer," to his order as an individual, as other checks had been drawn before, the bank was authorized to pay it without questioning it. There an agent drew a check in his own favor, not on an account opened by him, but against the account of his principal, and even if the Court of Appeals in an action by the same plaintiff against the Knickerbocker Trust Company (198 N. Y. 422, 92 N. E. 12, L. R. A. 1915B, 720) did suggest another view, it must be kept in mind that in the action at bar the depositor was drawing against his own account, and no question of authority from the depositor is involved.

In Allen v. Puritan Trust Co., 211 Mass. 409, 97 N. E. 916, L. R. A. 1915C, 518, one Baker drew a large number of checks to his own

order against an account kept by him under the name "Estate of Albert H. Baker, Wm. L. Baker, Administrator," whereby he met overdrafts on his personal account, and later the bank carried other checks to his credit in his personal account, whereupon he withdrew and misappropriated the money. It was found that as to the first class of checks the bank was liable, as it participated in the breach of trust, but that as to the second group it was not liable. The opinion states (page 422 of 211 Mass., page 919 of 97 N. E. [L. R. A. 1915C, 518]):

> "The principle governing the defendant's liability is that a banker, who knows that a fund on deposit with him is a trust fund, cannot appropriate that fund for his private benefit, or, where charged with notice of the conversion, join in assisting others to appropriate it for their private benefit, without being liable to refund the money, if the appropriation is a breach of the trust."

It is true that the decision as to the later checks was based on the master's finding that the circumstances begot suspicion, but did not inform the depositary of the purpose to misappropriate. However, it is noticeable that the depositor had drawn from the trust account to replenish his personal account to meet overdrafts during a period of two years. It illustrates how far the court would carry the rule that a banker is not bound to supervise the disposition of trust moneys drawn by a depositor in form indicating personal use.

In Gray v. Johnston, L. R. 3 H. L. 1, 16 Weekly Reporter, 842, Johnston, of Johnston & Mayston, died, and his widow and executrix formed a new firm under the name of Johnston & Mayston. The first firm had an account in the name of Johnston with bankers who carried an overdraft on the security of policies on Johnston's life, and from the avails of which the indebtedness was met and the surplus carried to the old account, but through the check of the executrix it was transferred to the account of the new firm and used by it. It was decided that the bankers were not liable to Johnston's estate for such money. Cairns, L. Ch., said:

> "In order to hold a banker justified in refusing to pay a demand of his customer, the customer being an executor, and drawing a check as an executor, there must, in the first place, be some misapplication, some breach of trust, intended by the executor; and there must, in the second place, as was said by Sir John Leach, in the well-known case of Keane v. Roberts, 4 Madd. 332, be proof that the bankers are privy to the intent to make this misapplication of the trust funds."

### Lord Westbury states clearly the principle:

> "A banker is bound to honor an order of his customer with respect to the money belonging to that customer which is in the hands of the banker; and it is impossible for the banker to set up a jus tertii against the order of the customer, or to refuse to honor his draft on any other ground than some sufficient one, resulting from an act of the customer himself. Supposing, therefore, that the banker becomes incidentally aware that the customer, being in a fiduciary or a representative capacity, meditates a breach of trust, and draws a check for that purpose, the banker, not being interested in the transaction, has no right to refuse the payment of the check, for if he did so he would be making himself a party to an inquiry as between his customer and third persons. He would be setting up a supposed jus tertii as a reason why he should not perform his own distinct obligation to his customer. But then it

has been very well settled that if an executor or a trustee, who is indebted to a banker, or to another person, having the legal custody of the assets of a trust estate, applies a portion of them in payment of his own debt to the individual having that custody, the individual receiving the debt has at once not only abundant proof of the breach of trust, but participates in it for his own personal benefit."

In this connection may be noticed Interstate Nat. Bank v. Claxton, 97 Tex. 569, 80 S. W. 604, 65 L. R. A. 820, 104 Am. St. Rep. 885, where it is said:

"From these authorities it is clear that a depositor, although holding money in a fiduciary capacity, may draw it out of the bank ad libitum. The bank is bound to honor his checks, and incurs no liability in so doing, as long as it does not participate in any misapplication of funds or breach of trust. The mere payment of the money to, or upon the checks of, the depositor, does not constitute a participation in an actual or intended misappropriation by the fiduciary, although his conduct or course of dealing may bring to the notice of the bank circumstances which would enable it to know that he is violating his trust. Such circumstances do not impose upon the bank the duty, or give it the right, to institute an inquiry into the conduct of its customer, in order to protect those for whom it may hold the fund, but between whom and the bank there is no privity." 97 Tex. 576, 80 S. W. 606, 65 L. R. A. 820, 104 Am. St. Rep. 885.

In Goodwin v. American National Bank, 48 Conn. 550, a person having an account as town treasurer, a private account, and also an account as treasurer of an estate, pledged stock belonging to the estate as security for his note as executor, and deposited the proceeds to his private account, and later his check drawn upon it, in favor of a third person, was paid, and also $7,321 transferred to his treasurer's account. After some years he became a fugitive, in default as executor and treasurer. The administrator sought an equity to reach the stock. It was decided that the bank was under no obligation to see to the application of the proceeds of the note, so long as it had no knowledge of the depositor's fraudulent intent, and that the bank was not charged with knowledge that a depositor was committing a fraud, nor was duty of inquiry imposed upon it simply because he drew upon a trust account checks payable to himself, or transferred funds from a trust account to a private account. It was said:

"And a check, drawn either individually or officially, payable to order or bearer, is so nearly the equal of currency in case of transfer, and performs so many offices of payment between individuals and executors, between the latter and trustees, and between these again and individuals, without giving any evidence, when presented, either of the number or character of the transactions of which it has been made a part, or of the payments which it has effected, that the law will not charge the officers of a bank with knowledge that a depositor has committed a fraud, nor impose upon them the duty of inquiry, because he has drawn upon a treasurer's account checks payable to himself or to bearer, or has transferred money from it to his own and from his own to it. They are not required to assume the hazard of correctly reading in each check the purpose of the drawer." 48 Conn. 567.

In Newburyport v. Spear, 204 Mass. 146, 90 N. E. 522, 134 Am. St. Rep. 652, the plaintiff's treasurer drew checks on the depositary and used them to pay his personal debts, and the action was maintained against the person receiving the checks, and in that respect was like Newman v. Newman, 160 App. Div. 331, 145 N. Y. Supp. 325, cited

by respondent; but the question arose as to the liability of the bank because an ordinance provided that "no money shall be drawn out of the city treasury, except on the written order of the mayor, addressed to the treasurer, and countersigned by the city clerk," and also because the checks were payable to the order of the city treasurer and indorsed by him. The court regarded the first ground untenable, upon the construction that the ordinance was a regulation of the conduct of the treasurer in making payments from the treasury, and not of the form of the check used for the purpose. It was also decided that the form of the check did not impute notice to the bank.

I also refer to Wickenheiser v. Colonial Bank, 168 App. Div. 329, 153 N. Y. Supp. 1035, so far as it decides that a bank of deposit was justified in issuing to the executor of a depositor a passbook in his own name, instead of paying over to him the actual cash, which in principle receives support from authorities to which it is not necessary to refer.

Batchelder v. Central National Bank, 188 Mass. 25, 73 N. E. 1024, is allied remotely to the question under discussion, but I note that it decided that the mere fact that a trustee deposits a check payable to him as trustee in his personal account at a bank, where he has no account as trustee, gives the bank no reason to believe that the trustee is acting dishonestly, and, if the trustee fails to account for the proceeds of the check, the beneficiary has no remedy against the bank. The case perhaps falls under a class of cases that I have cited only to exclude from discussion. A very similar decision is Safe Deposit & Trust Co. v. Bank, 194 Pa. 334, 44 Atl. 1064. I conclude that the check was proper in form and innocent in appearance.

[6] Nor did the multiplicity of checks bring into view vicious intention on the part of the depositor, of which the depositary should have taken notice. In principle it is immaterial whether one or many checks were drawn to the depositor's order. The form was proper, whether it was used for one or all. When would the notice begin to take effect, if at all? After 10, or 20, or what larger number of checks, had been drawn? A form of check appropriate and strictly conforming to the contract does not by repeated use take a sinister appearance. Beyond that, what was the custom of disbursement? Amongst how many checks were those in question presented through the several years, and under what circumstances? All such things would bear upon the provocation of even suspicion. The complaint shows that the parties arranged that "checks or drafts might be drawn for town purposes upon said funds of plaintiff on deposit." Assuming that arrangement means agreement, it was made between the depositor and the bank, and the plaintiff was not privy to it, and while I must assume from the complaint that it was made, however otherwise improbable, it does no more than emphasize the recognized fact that the bank was informed of the source and purposed use of the moneys. They, who made the compact, could unmake it.

Since writing the above, attention has been called to the decision of Bischoff v. Yorkville Bank by the Court of Appeals, modifying a decision of the Appellate Division (170 App. Div. 679, 156 N. Y.

Supp. 563). The opinion is instructive upon the question of the participation of a bank in the misappropriation of funds by a depositor, but there is no expression that impairs the result here reached.

The interlocutory judgment should be reversed, and the demurrer sustained, with costs, with leave to plead over within 20 days upon payment of costs. All concur.