## SOUTHWESTERN SURETY INS. CO. v. MARLOW et al.

No. 9532—Opinion Filed June 8, 1920.

(Syllabus by the Court.)

**1. Principal and Agent—Apparent Authority of Agent—Liability of Principal to Third Persons.**

A principal is bound by the apparent, as well as by the actual or express, authority given its general agent, where third persons have in good faith acted and relied thereon.

**2. Same—Agent of Surety Company—Authority — Limitation — Condition Subsequent.**

The Southwestern Surety Insurance Company appointed Schuyler as its agent in Stephens county to execute guardian and administrator bonds in a sum not in excess of $10,000. The power of attorney appointing said agent contained the provision that the bond should be accompanied with a "joint control agreement." Held that such provision in the power of attorney requiring the bond to be accompanied with a joint control agreement cannot be construed to limit the authority of the agent or make said agent a special agent, but must be construed as being a condition subsequent, and simply defining the duties of the agent.

**3. Banks and Banking—Deposits—Conditions—Rights of Third Persons.**

A bank deposit may be subject to any agreement which the depositor and the bank may make with respect to it, so long as the rights of third persons are not injuriously affected.

**4. Same—Defalcation by Guardian—Suit by Surety Against Bank—Burden of Proof.**

Where a surety company which is liable for defalcation of a guardian by reason of being a surety on the guardian's bond, brings an action against a bank where the guardian

had deposited the funds of his wards, upon the theory that the bank had wrongfully paid out the funds deposited therein, and upon the trial the court found upon sufficient evidence that the funds were paid out according to written instructions from the guardian, and there is no evidence that the bank received any benefit from any of the funds withdrawn, held, the bank having paid out said funds according to the orders of the guardian, in order for the surety company to be prejudiced by reason of such payments, it was incumbent upon the surety company to prove that the payments complained of amounted to a misappropriation of the funds and were not used for the benefit of the minors and were not legal charges against said estate.

**5. Appeal and Error—Review—Sufficiency of Evidence.**

Where there is any evidence reasonably tending to support the verdict of the jury or the judgment of the court in an action of purely legal cognizance, the same will not be set aside on appeal on the ground that it is contrary to the evidence.

Error from District Court, Stephens County; Cham Jones, Judge.

Action by Ether Muncus Marlow and others, by T. B. Reeder, guardian, against the Southwestern Surety Insurance Company upon former guardian's bond; the First National Bank of Duncan being made a party defendant. Judgment for plaintiffs and the bank, and the surety company brings error. Affirmed.

Bond & Kolb and J. M. Sandlin, for plaintiff in error.

Womack & Brown, for defendant in error First National Bank of Duncan.

T. B. Reeder, for defendants in error Ether Muncus Marlow et al.

McNEILL, J. This action was instituted to collect upon a guardianship bond executed by Lillie M. Muncus, nee Marlow, as guardian of her minor children, as principal, and the Southwestern Surety Insurance Company, as surety. The surety company by motion obtained an order from the district court making the First National Bank of Duncan a party defendant, and then filed a cross-petition against the bank asking judgment against the bank for whatever sum, if any, might be recovered by the plaintiffs against the surety company on the guardianship bond, for the reason that certain trust funds were deposited by the guardian in said bank and paid out wrongfully and fraudulently by said bank, which, in collusion with George W. Marlow, permitted Marlow to check out said funds. A jury was waived and the case was tried to the court.

There was judgment in favor of the plaintiffs and against the surety company in the sum of $1,000, and upon the cross-petition of the surety company against the First National Bank of Duncan the court found the issues in favor of the bank and dismissed the cross-petition of the Southwestern Surety Insurance Company. From said judgments the surety company has appealed to this court. For reversal of the judgment of the minors against the surety company, it is contended by the plaintiff in error that the bond was executed by P. H. Schuyler, purporting to be the agent of the plaintiff in error; it being the contention of the plaintiff in error that Schuyler was only a special agent with limited authority and authorized to execute bonds only in cases where same were accompanied with a "joint control agreement"; it being contended that this authority or power was delegated him by written authority. To support this contention, the plaintiff in error introduced a copy of the power of attorney of the Southwestern Surety Insurance Company, which read as follows:

" * * * Does hereby nominate, constitute and appoint P. H. Schuyler, of Duncan, Okla.. its true and lawful agent and attorney in fact, to make, execute, seal and deliver for and on its behalf as surety and as its act and deed any and all bonds to be filed in the county court of Stephens county, state of Oklahoma, for guardians, administrators, executors or curator, said bond not to exceed the sum of $10,000.00 and where accompanied by Joint Control Agreement, and the execution and acknowledgment of said bond by the said P. H. Schuyler, Duncan. Oklahoma."

The original power of attorney was not introduced in evidence, but it is contended that this was a copy of the power of attorney appointing Schuyler, although the power of attorney was not filed in the county court of Stephens county nor filed any place for record.

On the trial of the case the plaintiff in error produced Mr. Billingsley, the agent of the company, to explain what was meant by "Joint Control Agreement," who testified as follows:

"A. It is an agreement executed by the principal, in this case it would be the guardian or the principal, the guardian together with the bank designated by the guardian that no funds will be paid out of said bank except upon the check of the guardian properly countersigned by the agent of the company, that to be accepted and agreed to by the bank who is designated as the depository."

It is the contention of the plaintiff in error that the agent, Schuyler, was required to enter into a joint control agreement with the

guardian and some bank wherein it would be agreed between them that the funds of the guardian should be deposited in said bank and not be checked out of said bank unless the checks were countersigned by the agent of the company, and this was a condition precedent before he was authorized to sign said bond, and this made Schuyler a special agent instead of a general agent. With this contention, we cannot agree. First, for the reason that the power of attorney was never filed, nor notice of the contents of the same brought to the county court's attention, but, on the contrary, the evidence disclosed that Schuyler had executed numerous guardian bonds for the company in Stephens county, and therefore was holding himself out and acting as general agent for the company. The general rule is that the principal is bound by the apparent as well as the actual or express authority given its general agent. The company having delegated to Mr. Schuyler the apparent authority to execute guardian bonds, and he having acted as such agent in executing numerous bonds of like character, the court had a right to presume that in the execution of this bond, being a bond of like character to other bonds he had executed without any objection from the company, he was acting within the apparent scope of his authority. This court, in the case of National Surety Co. v. Miozrany, 53 Okla. 322, 156 Pac. 651, stated as follows:

"A principal is bound by the apparent, as well as by actual or express, authority given its general agent, where third persons have in good faith acted and relied thereon."

Nor can we agree with the contention of counsel for plaintiff in error that the court in accepting the bond was obliged to ascertain whether the agent and guardian and some bank had entered into a joint control agreement. Section 1344, Rev. Laws 1910, provides for surety companies executing bonds in judicial proceedings and provides for the court approving the same when executed by said companies. Section 1346, Rev. Laws 1910, provides how such contracts shall be construed. Section 1350, Rev. Laws 1910, provides when the company shall be estopped from denying liability. The joint control agreement was not a condition precedent to the execution of a bond, but was only a condition subsequent that the company required of the agent—that after he executed a bond, he make a contract and agreement with the surety company and with some bank or third party. The court in approving the bond was not obliged to ascertain whether said joint control agreement had been made, nor would the court be required to pass upon the legality of said agreement, nor would said provision in said power of attorney be a condition precedent any more than a provision that the

agent should report and return the premiums collected for said bonds to the company. The agent would be bound by these conditions, but third persons would not. Section 6532, Rev. Laws 1910, provides the conditions that are to be written into guardians' bonds. The authority to execute such bonds by a surety company having been fixed by statute, and the construction upon the bond being defined by the statute, and the surety's liability being defined by statute, the conditions of the bond having been defined by the statute, the surety company could not in appointing its agent impose upon the court, before approving the bond, any additional obligations to those imposed by statute.

The execution of the joint control agreement was a duty imposed upon the agent for the protection of the surety company, and that was the way it desired to control its dealings with the guardian, and the requirement could not be construed to limit the authority of the agent nor make the agent a special agent with limited authority in so far as third persons are concerned.

The next question presented by the plaintiff in error is that the court erred in failing to render judgment in favor of the plaintiff in error and against the defendant the First National Bank of Duncan. The assignment of error simply presents the question as to the sufficiency of the evidence to support the judgment of the court.

In determining whether the court committed error, the case, being an action for money judgment, was an action triable before a jury, and the force and effect to be given the judgment of the trial court on appeal is stated in the case of Sallisaw v. Chappelle, 67 Oklahoma, 171 Pac. 22:

"Where there is any evidence reasonably tending to support the verdict of the jury or the judgment of the court in an action of purely legal cognizance, the same will not be set aside on appeal on the ground that it is contrary to the evidence."

The testimony disclosed about the following state of facts: There were two accounts carried in the First National Bank of Duncan, one in the name of Lillian N. Marlow, guardian of Ollie Lee Muncus, and one as guardian of Estella D. Muncus. Mrs. Marlow testified that she did not deposit the money in the bank, nor did she ever sign any checks drawn on said accounts except one check payable to a doctor. Most of this money was paid out either by checks or orders during a period of three years. The record disclosed that the bank paid one or two checks that were payable to G. W. Marlow and signed as follows: "Ollie Lee Muncus by G. W. Marlow." The record further disclosed

that there were some three or four charges made against said accounts of the minors for a certain amount of money and credited to the account of Mrs. Marlow. These charges consisted of a couple of $100 charges and one $200 charge.

The defendant bank offered evidence to contradict the testimony of Mrs. Marlow. The cashier testified that the charges made against the guardianship account by the bank and credited to the account of Mr. Marlow were made with the knowledge and by the authority of Mrs. Marlow, and that she knew of said facts. In regard to the checks paid by the bank where the minor's name was signed by Mr. Marlow and the checks charged to the guardianship account, the bank produced a written order signed by Mrs. Marlow, dated the same day the money was deposited in the bank, authorizing the bank to charge said checks to the guardianship account when signed by Mr. Marlow. The cashier, who identified Mrs. Marlow's signature, testified that she had signed numerous checks drawn on said bank that had been charged to said account. All of the canceled checks were not introduced in evidence. It appears that most of them had been lost or mislaid by Mr. or Mrs. Marlow and only a few of the same were produced and appear in the record. Among the checks produced one appears to have been made payable to the county treasurer, and a couple made payable to Mr. Marlow, and some to other and different parties. The cashier testified that both accounts had been balanced approximately every 30 days and the canceled checks or statement showing the charges made against said accounts for which Marlow was given credit had been returned to Mrs. Marlow, and during the three years the accounts were carried in said bank she never made any complaint regarding the same.

Upon this state of facts, the court found the issues in favor of the bank and against the surety company. If the bank is liable, we must determine upon what theory a liability would exist. The rule is stated in the note of L. R. A. 1915C, page 519, as follows:

"There are three ways in which a bank may incur liability and be compelled to make good deposits that have been misappropriated by the fiduciary: (1) By a violation on its part of the contract, express or implied, between it and the owner of the fund. The reason for the bank's liability is based upon the general principle that the bank cannot discharge its obligation to a depositor except by payment in strict conformity to the contract of deposit. (2) By appropriating the fund, either with or without the fiduciary's consent, to the payment of the latter's debt to the bank. The reason for the bank's liability is based upon the general theory that the owner of a fund may follow it into the hands of and recover it from any person who has not innocently given value therefor. The action for money had and received is an appropriate form of action in this class of cases. (3) By assisting the fiduciary to accomplish the misappropriation, the bank having knowledge, actual or constructive, that the fraud is being or about to be perpetrated by the fiduciary. The reason for the bank's liability is that it knowingly makes itself a party to a fraud, and must make good the loss that results from the misappropriation."

We will now discuss the cases under the three classifications set out above.

First: Did the bank violate the contract, express or implied, between it and Mrs. Marlow in honoring checks without authority from Mrs. Marlow and in making certain charges against the accounts? The authorities are all uniform that as between the bank and a general depositor the relation of debtor and creditor exists irrespective of whether the deposit is that of a trust fund or the individual property of the depositor. As to how the bank may pay out said funds or discharge said indebtedness, the rule is stated in 7 Corpus Juris, page 642, as follows:

"A bank deposit may be subject to any agreement which the depositor and the bank may make with respect to it, so long as the rights of third persons are not injuriously affected."

3 R. C. L., page 540, states the rule as follows:

"A bank or banker cannot charge the depositor with any payments, except such as are made in conformity with his orders; for the relation of a bank and its depositors is one simply of debtor and creditor."

See, also, Shopert v. Indiana National Bank (Ind.) 83 N. E. 515; Morse on Banks and Banking, vol. 1 (5th Ed.) pp. 589, 590.

As to whether the bank paid out said funds according to the order of Mrs. Marlow was a question of fact to be determined by the court under all of the evidence in the case. The evidence upon this question was conflicting. Mrs. Marlow testified that she never deposited the money and never had signed any checks except one, but admitted signing the order which authorized the bank to pay said checks, although she stated that she did not know exactly what the order contained. The evidence on behalf of the bank was that numerous checks were signed by her. The cashier testified that the money was paid out and those items charged to these accounts as authorized by her and with her knowledge and consent. In view of the fact that the evidence is conflicting upon this

question, we cannot say there is no evidence reasonably tending to support the finding of the court upon this question.

It might be suggested, although the case is not briefed on this theory, that the general rule that the bank may pay out the funds deposited according to the contract between the bank and the depositor is not applicable for the reason that the rights of a third person intervened. This, perhaps, would be true if there were any evidence that the items charged to the accounts or the checks signed by Mr. Marlow were not used for the benefit of the minors, or that the same were not in payment of legal charges against the estate of the minors. As to whether these particular items were misappropriated by Marlow or were used to pay the legitimate claims against the estate of the minors, does not appear. For all we know these claims might have been for clothing or educating the minors or some legitimate expense. The surety company could not claim it was prejudiced by the payment unless the evidence disclosed that funds derived from these charges and checks were misappropriated, and there is no evidence of this kind and character in the record. The fact that these checks were payable to Mr. Marlow although signed by him is not sufficient evidence that the funds were to be wrongfully appropriated. Such is the holding in the case of Town of Eastchester v. Mt. Vernon Trust Co., 159 N. Y. Supp. 289, as follows:

"Where a town supervisor deposited town funds in bank under an arrangement whereby they might be withdrawn for town purposes by check or draft containing the signature of the supervisor as such, when such supervisor presented such a check, payable to his own order, the bank was not called upon at its peril to delay payment, interrogate the supervisor as to his purposed use of the funds, or suspend payment pending investigation, since, when a check in the form justified by the contract between the parties is presented by a depositor of trust money, the debtor owes no duty on behalf of the beneficiary to scrutinize the demand, or be circumspect, lest his customer is betraying his trust."

See Central Nat. Bank of Baltimore v. Connecticut Mutual Life Ins. Co. (U. S.) 26 L. Ed. 693. See American Nat Bank of Stigler v. Funk, 68 Oklahoma, 172 Pac. 1078. There is sufficient evidence in the record to support the finding that the checks paid by the bank were authorized by Mrs. Marlow.

The second classification as stated above is a bank liable for appropriating trust funds either with or without the fiduciary's consent in payment of the latter's debt to the bank. There is no evidence that the bank would be liable, by reason of facts and conditions existing, under this subdivision, for the reason there is no evidence that either Mr. or Mrs Marlow used any of said funds for the payment of any indebtedness due or owing to the bank, therefore no liability would exist under this subdivision.

Under the third classification, the question presented: Is the bank liable by reason of assisting the fiduciary to accomplish the misappropriation, the bank having knowledge, actual or constructive, that a fraud was being or about to be perpetrated by the fiduciary? Upon this question the authorities are not in harmony. There is a line of cases holding that no liability exists against the bank in paying out trust funds deposited in said bank when paid according to the order or checks of the depositor, unless the bank received some benefit from the misappropriation of the trust funds, or unless the facts and circumstances were such as to amount to fraud and collusion between the depositor and the bank. The cases that follow and support this theory are as follows: Goodwin v. American Nat. Bank, 48 Conn. 550; Munnerlyn v. Augusta Saving Bank (Ga.) 14 S. E. 554; Town of Eastchester v. Mt. Vernon Trust Co., 159 N. Y. Supp. 289; Interstate Nat. Bank v. Claxton (Tex.) 80 S. W. 604; United States Fidelity & Guaranty Co. v. Adoue & Lobit (Tex.) 137 S. W. 648; Bank of Hartford v. McDonald (Ark.) 154 S. W. 512; State v. Calcasieu Nat. Bank (La.) 61 So. 857; United States Fidelity & Guaranty Co. v. First Nat. Bank of Monrovia (Cal. App.) 123 Pac. 352; Newmark Grain Co. v. Merchants' Nat. Bank of Los Angeles (Cal.) 135 Pac. 958.

In Morse on Banks and Banking (5th Ed.) on pages 589 and 590, it is stated as follows:

"Supposing that the banker becomes incidentally aware that the customer, being in a fiduciary or a representative capacity, meditates a breach of trust, and draws a check for that purpose, the banker, not being interested in the transaction has no right to refuse the payment of the check, for if he did so he would be making himself a party to an inquiry as between his customer and a third person."

In discussing the cases holding to the contrary, on page 591, it is stated as follows:

"But on scrutinizing the cases cited it will be found that participation in the profits of the fraud is, generally speaking, an element in the case; and a mere reason to believe that the trustees were misapplying the assets will not make the banker liable; for this would be to make every trustee accountable for his conduct in the trust to every agent whom he happened to employ, and would carry the principle of constructive trust to

an inconvenient, and indeed to an impracticable length."

The three leading cases holding to the contrary—that the bank may be liable if it has notice that the trustee intended to misappropriate the funds, although the funds are paid out according to the contract with the depositor and the bank, where the bank received no benefit from the transaction—are the cases of Duckett v. Nat. Mechanics' Bank (Md.) 38 Atl. 983, Allen v. Puritan Trust Co. (Mass.) 97 N. E. 916, and Lowndes v. City Nat. Bank (Conn.) 72 Atl. 150. An examination of each of these three cases discloses that the deposit in each instance was a trust fund and there were numerous items and numerous checks involved, and the accounts extended over a period of several years. In each of the above cases the court held the bank liable for those checks or that portion of the trust fund that was used by the depositor to pay his individual indebtedness to the bank, upon the theory that the bank had received the benefits therefor in each instance. The court announced the rule that if the bank had notice that the funds were to be misappropriated by the trustee, the bank would be liable by honoring .checks. However, in each case the court held in favor of the bank as to the checks that were cashed by the depositor and the funds drawn out and misappropriated by him. While these cases announce the rule that the bank was liable if it honored checks with notice that the funds were to be misappropriated, still the court in each case found the proof of notice was not sufficient.

Justice Thomas, speaking for the New York Court of Appeals, in the case of Town of Eastchester v. Mt. Vernon Trust Co., in commenting on the case of Allen v. Puritan Trust Co., stated as follows:

"It is true that the decision as to the later checks was based on the master's finding that the circumstances begot suspicion, but did not inform the depository of the purpose to misappropriate. However, it is noticeable that the depositor had drawn from the trust account to replenish his personal account to meet overdrafts during a period of two years. It illustrates how far the court would carry the rule that a banker is not bound to supervise the disposition of trust moneys drawn by a depositor in form indicating personal use."

Counsel for plaintiff in error rely upon the case of U. S. Fidelity and Guaranty Co. v. Adoue & Lobit (Tex.) 137 S. W. 648, but that case does not support their contention, as the court held that the bank was liable only for the funds paid to it by the depositor out of the trust funds. The case of Duckett v. Nat. Mechanics' Bank, supra, which they relied upon, announced the rule supporting their contention, but the court in that case held the facts were not sufficient to make the bank liable, although the facts as to notice were stronger, in our opinion, than in the case at bar.

It will be unnecessary for us to decide which rule or which line of cases this court will follow, as plaintiff in error, in our judgment, would not be entitled to recover under either theory—

First: For the reason there is no evidence in the case at bar that the funds derived from any particular checks or the charges complained of were misappropriated and were not in payment of proper charges against the minors' estate, nor does the evidence disclose that the minors did not receive the benefit from the items complained of. It might be contended that the order of the county court settling the account of the guardian determined this matter, but an examination of the account discloses that no one appeared and the court found the guardian liable for just what money she received.

Second: If we weigh the evidence in the case and give it the same weight as in the cases which announce the rule that the bank is liable for honoring checks if the bank had notice that the funds would be misappropriated, although the bank received no benefit from the misappropriation. The facts and circumstances are not as strong as the facts were in those cases where the court held the bank would be liable but found the facts were not sufficient to justify the court in holding that the bank had notice or sufficient knowledge to put it upon inquiry, and therefore the bank was not liable. We, therefore, conclude that there was sufficient evidence to support the judgment of the court. The surety company offered to prove, in regard to the order signed by Mrs. Marlow authorizing the bank to charge checks to the guardianship account, that she did not understand that the same included anything but charging checks to her private account. But in this we think there was no error, as such fact would not be binding upon the bank unless the company offered to prove that the bank knew of said fact.

For the reasons stated, the judgment of the trial court is affirmed.

RAINEY, C. J., concurs in conclusion. HARRISON, V. C. J., and PITCHFORD, JOHNSON, and BAILEY. JJ., concur.