**MUSKOGEE REFINING CO. v. WATERS PIERCE OIL CO. et al.**

No. 10479—Opinion Filed May 15, 1923.

(Syllabus.)

1. **Appeal and Error — Necessity for Cross-Petition in Error—Attack on Findings in Equity Case.**

The defendant in error, on appeal, may attack erroneous findings of the trial court, made in an equity case, if exceptions were saved to said findings, in order to sustain his judgment, without filing a cross-petition in error.

2. **Same—Scope of Right of Party Not Appealing to Urge Error.**

The general rule is, the party not appealing will not be heard to urge for review errors committed against him in the trial court in order to modify in any manner a judgment in his favor, but said party on appeal may attack erroneous rulings of the trial court in order to sustain his judgment.

3. **Reformation of Instruments — Mistake — Proof.**

The law does not authorize the reformation of a written contract on the ground of mutual mistake (i. e., a mistake by each of the parties thereto), unless the proof of such mutual mistake is clear and convincing.

4. **Same—Mutual Mistake in Contract—Insufficiency of Evidence.**

Record examined, and held, that by application of the above principle of law, the evidence is insufficient to support the finding of the court that schedule "A" was attached to the contract by mutual mistake.

5. **Principal and Agent—Apparent Authority of Agent—Reliance.**

A principal is bound by the apparent, as well as by the actual or express, authority given its general agent, where third persons have in good faith acted and relied thereon.

6. **Contracts — Reformation and Enforcement.**

Record examined, and held, the judgment of the trial court is supported by the evidence, and the same is affirmed.

Error from Superior Court, Muskogee County; Guy F. Nelson, Judge.

Action by the Muskogee Refining Company against the Waters Pierce Oil Company and another to reform contract and for recovery thereon. Judgment for defendants, and plaintiff brings error. Affirmed.

W. A. Ledbetter and Geo. S. Ramsey, for plaintiff in error.

N. A. Gibson, J. H. Hull, and T. L. Gibson, for defendants in error.

McNEILL, J. This action was commenced in the superior court of Muskogee county by the Muskogee Refining Company against the Waters Pierce Oil Company and the Pierce Oil Corporation to reform a written contract entered into between the Muskogee Refining Company and the Pierce-Fordyce Oil Association, and by the Pierce-Fordyce Oil Association assigned to the Waters Pierce Oil Company, and by the latter company assigned to the Pierce Oil Corporation, and to recover judgment for money due under the contract after the same was reformed.

The Muskogee Refining Company by the terms of said contract agreed to sell all the gasoline, naphtha, and burning oil refined, made, or manufactured by its refineries at Muskogee and Okmulgee, and the defendant company agreed to purchase the same for a period of three years commencing October 31, 1911. The assignees of the contract do not on appeal contend the question of innocent purchaser is involved. Section 3 of the contract fixed the price to be paid for gasoline, naphtha, and burning oil, so long as the prices of crude oil purchased by the plaintiff remained at 54 cents per barrel. Section 6 of the contract is as follows:

"6. Prices to be charged by the first party and paid by the second party for the commodities sold hereunder are based on the present cost of 54 cents per barrel of 42 gallons for crude oil delivered at the refineries of the first party, which is the present cost

to the first party for the crude oil used in its refineries.

"And it is hereby agreed and understood that if the cost of crude oil to the first party advances or declines during the operation of this contract, that then for each advance or decline in the cost of said crude oil, readjustment of the aforesaid prices shall be made, so that the prices to be paid for the commodities sold hereunder shall bear the same proportion to the cost to the first party of crude oil as the present prices bear to the cost of 54 cents per barrel; provided, however, that no readjustment of said prices shall be made unless the cost of said crude oil to the first party shall advance or decline five cents per barrel. A schedule is attached hereto and made a part hereof, marked 'Schedule A,' showing the prices to be paid for gasoline, naphtha, and burning oils when the cost of crude oil to the first party advances or declines above the said present cost of 54 cents per barrel."

Schedule A attached thereto is as follows:

"Schedule A.

"Prices to be paid for gasoline, naphtha and burning oil on advance or decline of crude oil as set forth in paragraph 6 of this contract."

"Following figures are based on 55 per cent. of an advance or decline of 5c per barrel from 54 cents as the three products named above constitute 55 per cent. of the crude oil, distributed as follows: gasoline 10 per cent. naphtha 7 per cent. and burning oil 38 per cent.:

| Crude: | Gasoline: | Naphtha: | Burning Oil |
|--------|-----------|----------|-------------|
| 39c bbl. | .0530 gal. | .0275 gal. | .0148 gal. |
| 44c bbl. | .0561 gal. | .0292 gal. | .0157 gal. |
| 49c bbl. | .0593 gal. | .0308 gal. | .0166 gal. |
| 54c bbl. | .0625 gal. | .0325 gal. | .0175 gal. |
| 59c bbl. | .0657 gal. | .0342 gal. | .0184 gal. |
| 64c bbl. | .0689 gal. | .0358 gal. | .0193 gal. |
| 69c bbl. | .0720 gal. | .0375 gal. | .0202 gal. |

The plaintiff's original petition asked to have the contract reformed by eliminating schedule "A," for the following reasons: First, the minds of the parties thereto had never met regarding the same; second, the same had not been assented to by the Pierce-Fordyce Oil Association, nor assented to by the board of directors of the plaintiff company; and third, because the president of the company had no authority to attach schedule "A" to the contract; fourth, because schedule "A" was attached to the contract by mutual mistake of both parties; fifth, because said schedule was repugnant to section 6 of the contract. The original petition was filed in November, 1912, and was amended after the expiration of the contract, and recovery sought for the full amount claimed due under the contract after schedule "A" was eliminated. It was alleged the plaintiff company delivered the three products manufactured during the term of the contract, which were received by the defendants.

The defendants in their answer admit the execution of the contract, deny there was any mutual mistake in the preparation of schedule "A," but allege that schedule "A" was prepared by the plaintiff in conformity with the agreement entered into by the Pierce-Fordyce Oil Association and the plaintiff, and that the plaintiff was fully advised of the contents of schedule "A," which was attached to the contract at the time of the execution and when the same was delivered to the defendant. The defendants further answered that they had purchased the products for a period of two and one-half years under the contract and defendants had paid for said products under schedule "A," and that plaintiff was estopped from denying the same was not the true contract of the parties.

With the issues thus framed, the case was tried to the court without a jury. The court made findings of fact and conclusions of law and rendered judgment for the defendants. From said judgment the plaintiff has appealed. For reversal, the plaintiff assigns numerous assignments of error. The first question for consideration is whether the contract should be reformed and schedule "A" eliminated. The trial court found that schedule "A" was attached to the contract by mutual mistake, and further found that the plaintiff by its conduct had ratified the contract with schedule "A" attached, by delivering the products with full knowledge of said mutual mistake. The defendants excepted to the finding of the court that schedule "A" was attached to the contract by mutual mistake, and the plaintiff excepted to the finding of the court that the plaintiff had ratified the contract by complying with its terms with full knowledge of said mistake, if any. It will be necessary to first consider whether the finding that schedule "A" was attached to the contract by mutual mistake of the parties is clearly against the weight of the evidence, when the evidence is weighed according to the law applicable to reformation of contracts made by mutual mistake. Plaintiff contends this finding is supported by the evidence, while defendants contend the evidence is insufficient to support said finding; and the plaintiff further contends that the defendants, not having filed a motion for new trial and followed the same by a cross-appeal, cannot question the correctness of the trial court's finding that schedule "A" was attached to the contract by mutual mis-

take. With this contention we cannot agree. Plaintiff's position is true when applied to an appellant, but does not apply to the defendants in error, who do not seek to modify the judgment, but only seek to sustain the same.

The Supreme Court of Missouri, in the case of St. Charles Sav. Bank v. Denker, 205 S. W. 208, in the 9th, 10th, and 11th paragraphs of the syllabus, stated as follows:

"9th. A respondent not appealing is not required to file an exception to the report of a referee and to assign error in the appellate court in order to take advantage, by upholding the judgment, of the referee's error, as in receiving a deposition in evidence improperly.

"10th. A party not appealing will not be heard to urge a review of errors committed against him in the trial court, in order to modify, in any manner, the judgment in his favor.

"11th. A respondent on appeal may attack erroneous rulings of the trial court in order to sustain his judgment."

In the body of the opinion, on page 212, the court stated as follows:

"It is true an appellant cannot take advantage of an error of a referee unless he files an exception to his report, and also presents a motion for new trial pointing out errors to the circuit court which approves the report, and assigns error in this court. But a respondent, not appealing, is not required to take any one of such superfluous steps, because he cannot be heard to question the propriety of a judgment from which he has not appealed."

Again, on page 212, the court stated as follows:

"The cases which announce the well-established rule that a party not appealing will not be heard in this court to urge a review of errors committed against such party in the trial court, are always where the respondent seeks some affirmative relief in the appellate court. A respondent cannot have the advantage of errors committed by the trial court for the purpose of modifying in any manner the judgment in his favor. But it is generally held that the respondent on appeal may attack the rulings of the trial court which are erroneous, for the purposes of sustaining his judgment"—citing a long line of decisions.

The following authorities support the principle announced above: Ford v. Dilly (Iowa) 156 N. W. 513; Taylor v. Independent School Dist. (Iowa) 164 N. W. 879; State ex rel. Owen v. Consolidated Independent School District (Iowa) 176 N. W. 976; Mendota Club v. Anderson (Wis.) 78 N. W. 185; Fleming v.

Northern Tissue Paper Mill (Wis.) 114 N. W. 841, 15 L. R. A. (N. S.) 701-710; Miller v. Brooks (Ga.) 47 S. E. 646; Harris v. Harris (Mass.) 26 N. E. 1117; Landrum v. Jordan, 203 U. S. 55, 56 L. Ed. 88; Huntington v. Love (Wash.) 106 Pac. 185. The last cited is almost identical with the case at bar.

The plaintiff in error relies upon the cases of Brubaker v. Brubaker (Kan.) 86 Pac. 455; City of Muskogee v. Irvin, 46 Okla. 118, 145 Pac. 415; Behrens Lumber Co. v. Laper (S. D.) 125 N. W. 574, and the case of Rawlines v. Murphy (Wyo.) 115 Pac. 436. Those cases are not in point, the principle of law announced in those cases applying to the appellant and not the appellee, except the last cited case, where the appellee was seeking to have the judgment modified. And, as stated above, if the party not appealing does not seek to have the judgment modified, it is unnecessary to file a cross-petition to attack the rulings of the court which are erroneous, and the contrary would also be true—if either party seeks to have the judgment modified, it is necessary to file a petition in error, or a cross-petition in error.

The case of Roach v. Junction Oil & Gas Co., 72 Oklahoma, 179 Pac. 934, is also relied upon. In that case this court stated as follows:

"The court found that the lease in question was executed and delivered January 9, 1911, and inasmuch as no cross-appeal is prosecuted from this finding, we shall assume that fact to be as found."

This was the only language in the opinion that referred to this question, and no authority is cited to support the same. The syllabus announced no such principle of law, nor does it appear that the question was involved in the case. If the same attempts to announce such a principle, we do not feel the same should be followed.

The evidence regarding whether schedule "A" was attached by mutual mistake is conflicting. The facts on this point may be summarized as follows: Mr. Hennig was the president of the Muskogee Refining Company and Clarence Thomas was secretary and its attorney at the time of the execution of the contract. Mr. Fordyce was president of the Pierce-Fordyce Oil Association, and H. C. Pierce was connected with the Waters Pierce Oil Company and also the Pierce-Fordyce Oil Association. In the early part of October Mr. Hennig began negotiations with Mr. Fordyce and Mr. Pierce for the

sale of all the refined products of their refineries to Mr. Pierce's company. During these negotiations, Mr. Parker, superintendent of the Muskogee Refining Company, prepared a statement showing that from 30,000 barrels of crude oil the per cent. of by-products manufactured was as follows:

Gasoline 10 per cent.; naphtha 7 per cent.; burning oil 38 per cent., or a total of 55 per cent. The other 45 per cent. was made up of the following by-products: Cylinder stock 12 1-2 per cent.; nonviscous neutral 4 per cent.; viscous neutral, 4 per cent., was 1¼ per cent.; black oil 3 per cent.; fuel oil 17¼ per cent., and loss 3 per cent. This statement further disclosed the expense of operating the refinery, which included labor, fuel, insurance, taxes, and other incidental expenses, and that the expense of refining crude oil when costing 52 cents and when costing 54 cents was the same regarding the various items of expense, except the difference in items of the cost of crude oil. The question of the sale and purchase of all the refined products was discussed, but soon dropped, and the parties thereafter only considered the three products mentioned above.

The first draft of the contract was prepared by Mr. Fordyce and submitted to Mr. Hennig and Clarence Thomas, secretary and attorney for the company, who went over the same, and they prepared a draft which was submitted to Mr. Fordyce. These drafts were modified some, and then Mr. Fordyce prepared the final draft with the exception of schedule "A," which schedule Mr. Hennig had prepared by one of his employes, to wit, Mr. Weakley. Section 6 was practically the same in all the drafts of contract. As to what was said during the preparations of the contract regarding what should be contained in schedule "A," the parties disagreed and there is a conflict between the testimony of Mr. Fordyce and Mr. Hennig. Mr. Fordyce testified, in substance, that the matter of schedule "A" was discussed by Mr. Hennig and Mr. Thomas prior to the execution of the contract, and it was understood that schedule "A" was to be drafted on the theory that 55 per cent. of the five-cent advance or decline should be proportioned to the cost of the commodity which the Pierce-Fordyce Oil Association was purchasing, and the other 45 per cent. of the advance or decline should be borne by the other refined products, and it was never discussed or contemplated that the total advance or decline of oil should be chargeable to the three commodities which the defendant company was purchasing, and the first heard of any

suggestion to that effect was several months thereafter, when the same was mentioned to him by Mr. Crawford and Mr. McBride. Hennig denied that there had ever been any discussion that the price of the three refined products should be proportioned on 55 per cent. of a five-cent advance or decline of the crude.

Mr. Hennig states he instructed a Mr. Weakley, an employe of his, to prepare schedule "A," which was done, and attached to the contract, and delivered to Mr. Hennig. Mr. Hennig then took the contract with the schedule attached to Mr. Fordyce's office, where the same was executed in duplicate by Mr. Hennig and Mr. Fordyce, and then delivered to Mr. Hennig, who took the contracts back to his office in St. Louis, and then took the train for Dallas, and notified Mr. Thomas to meet him at the train at Muskogee, where Mr. Thomas executed the same as secretary of the company. Thereafter Mr. Hennig delivered one copy to Mr. Fordyce and retained the other. Mr. Hennig testified that Fordyce did not examine the schedule, but that he had looked at the schedule and saw that it was in the contract. He was asked if he knew the contents of it, and he stated he supposed he did, and that he probably examined it at the time he executed the contract.

Mr. Fordyce testified that the schedule was attached to the contract when it was executed and had correctly set forth the sliding scale as it was agreed to, otherwise he would not have signed or accepted it. Mr. Fordyce and Mr. Hennig were the only witnesses that had any information regarding what was said and done prior to executing the contract, and at the time of executing the same, Mr. Thomas being dead at the time of the trial. The contract was submitted by Mr. Hennig to the board of directors of the Muskogee Refining Company on or about October 19th, and schedule "A" was not attached to the same at that time, but the contract provided for and referred to schedule "A." The board of directors authorized the execution of the contract. The records further disclose that immediately after the contract was executed, the parties proceeded with the performance of the same. The price of crude oil did not change until the early part of January, 1912, and at about this time Mr. Hennig resigned as president of the company and went to work for the Pierce Oil Corporation.

Numerous letters passed between Mr. Crawford, representing the Muskogee Refin-

ing Company, and Mr. Fordyce and Mr. Pierce in relation to the contract and as to how they construed the same. At one time the Muskogee Refining Company refused to fill any orders of the company, and the defendant company advised the refining company they were purchasing the products in other places and charging the refinery company for the loss, if any, by reason of having to purchase the products at other places, and would expect to hold the Muskogee Refining Company liable for said loss under the terms of the contract. Thereafter the company again began filling the orders during the life of said contract. As a part of this same transaction, it was also agreed that the Waters Pierce Oil Company should purchase from the Muskogee Refining Company certain stations in Oklahoma and Arkansas.

The above is substantially all the evidence material to the question of fact to be considered, to wit, Was schedule "A" attached to the contract by the mutual mistake of the parties?

This court in several cases has had under consideration the question of reforming a written contract by mutual mistake. This question was before this court in the case of Hope v. Bourland, 21 Okla. 864, 98 Pac. 580. In that case this court quoted with approval from Bishop on Contracts, secs. 707 and 708, as follows:

"The mistake must, in general, be mutual, and it must be clearly established by the proofs, which may be either oral or written. Indeed, in no case will a court decree an alteration in the terms of a duly executed written contract, unless the proofs are full, clear, and decisive. Mere preponderance of evidence is not enough, and the mistake must appear beyond reasonable controversy."

This case was followed and approved in the case of Owen v. City of Tulsa, 27 Okla. 264, 111 Pac. 320, in the case of Cleveland v. Rankin, 48 Okla. 99, 149 Pac. 1131, and in the case of Davidson v. Bailey, 53 Okla. 91, 155 Pac. 511, where the court in the first paragraph of the syllabus stated as follows:

"To justify the reformation of a deed, failing to conform to the agreement of the parties thereto through mutual mistake, the proof should be clear, unequivocal, and decisive. Mere preponderance of evidence is not enough; the proof must establish the facts to a moral certainty, and take the case out of range of reasonable controversy, but need not be so certain as to go beyond any possibility of controversy."

In the case of Christner v. McKay, 77 Okla. 116, 187 Pac. 207, this court in the first paragraph of the syllabus stated as follows:

"The law does not authorize the reformation of a written contract on the ground of mutual mistake (i. e., a mistake by each of the parties thereto), unless the proof of such mutual mistake is clear and convincing."

The evidence in the instant case falls far short of complying with the rule above announced. The evidence is not clear, unequivocal, or decisive, and it can hardly be said that the preponderance of the evidence was in favor of the plaintiff. We therefore must conclude that the finding of the court that schedule "A" was attached to the contract by mutual mistake when measured by the proper rule of law is clearly against the weight of the evidence. It is contended that Hennig had no authority by virtue of his office to make a contract of this character, or consent or agree to any modification or amendment that was not authorized by the board of directors. The general rule may be stated: That the president may not by virtue of the power inherent in his office, without authority from the board of directors, act as agent of the corporation, but, like other agents, must derive his power from the board of directors or from the corporation. It is admitted that the board of directors authorized Mr. Hennig to execute the contract which referred to schedule "A." It must be assumed he was authorized to attach schedule "A" to the contract. Under the rule announced in the cases of National Surety Co. v. Miozrany, 53 Okla. 322, 156 Pac. 651, and Southwestern Surety Ins. Co. v. Marlow et al., 78 Okla. 313, 190 Pac. 672, we think after authorizing the president to execute the contract and to attach schedule "A," and a third person in good faith acted and relied thereon, they are bound by his acts. This court has announced the rule as follows:

"A principal is bound by the apparent, as well as by the actual or express, authority given its general agent, where third persons have in good faith acted and relied thereon." Southwestern Surety Ins. Co. v. Marlow, supra.

It is next contended that section 6 of the contract was clear, and fixed the price to be paid for the products, and that schedule "A" contains terms and provisions inconsistent with and repugnant with the contract, therefore the terms and provisions of the contract controlled and took precedence over the conflicting provisions in the schedule or exhibit attached thereto. In construing contracts, the general rule of law applicable is that the terms of the written contract must be

taken to express the true intent of the parties, and if possible the court should give force and effect to each and every provision of the contract. While it is true that section 6 makes no provision for the fluctuation of the prices, for the advance or decline of the prices to be governed by the proportion of 55 per cent. of the advance, being the ratio of the refined products being purchased by the defendants, yet the schedule attached to the contract in plain and in unambiguous language makes that provision, and it was prepared by the agent of the president, and the president of the company stated he supposed he knew what was in the schedule when the contract was signed. If there was any ambiguity, the same was caused by the president of the company. Then, under our statute, the court is required to give the construction most favorable to the party who did not cause the ambiguity. This schedule would work to the advantage of the defendants when the price of oil would go up, but should the price of oil go down, the advantage would have benefited the plaintiff. We think the conclusion of the plaintiff is not well taken.

It was agreed in the trial of the case that if section 6 was a part of the contract and regulated the price to pay for the products, the defendants had paid to the plaintiff the full amount due when computed according to the terms of schedule "A." Having reached this conclusion, these questions determine the matter in controversy, and the question of ratification and the other assignments of error become immaterial.

For the reasons stated, the judgment of the trial court is affirmed.

JOHNSON, C. J., and NICHOLSON, COCHRAN, and MASON, JJ., concur.