Note.—See under (1) 9 C. J. p. 589 §85; anno. 44 L. R. A. 321, 9 A. L. R. 1194. 4 R. C. L. pp. 304, 307; 1 R. C. L. Supp. p. 1112; 4 R. C. L. Supp. p. 261: 5 R. C. L. Supp. p. 237. (2) 4 C. J. p. 879 §2853; 2 R. C. L. p. 194; 1 R. C. L. Supp. p. 433; 4 R. C. L. Supp. p. 90; 5 R. C. L. Supp. p. 79. (3) 9 C. J. pp. 602, 602 (Anno) §89; p. 621 §99; anno. 49 L. R. A. (N. S.) 999; 4 R. C. L. p. 317; 1 R. C. L. Supp. p. 1117.

---

## AMERICAN NAT. BANK v. ARDMOREITE PUBLISHING CO.

No. 17327—Opinion Filed Dec. 7, 1926.

Rehearing Denied Feb. 15, 1927.

### 1. Frauds, Statute Of—Agreement to Lease—Memoranda Insufficient.

A. offered by letter to lease real estate to B. specifying only that the term should be for three years, describing the property and offering to prepare a written lease. B. by letter replied, "We will take advantage of your offer," and asked A. to forward the written contract. Held, said letters did not

constitute a valid lease for the real estate under section 5034, C. O. S. 1921, providing that an agreement for such leasing for longer period than one year is invalid unless some note or memorandum thereof be in writing and subscribed by the party to be charged, since such letters do not contain all the essential terms and conditions of such lease contract.

**2. Appeal and Error—Error Against Successful Party—When Corrected by Affirmance of Judgment.**

The successful party may, without crossappeal or assigning errors, save the judgment by showing that errors were committed against him below which, if corrected, will make the result reached below a correct result.

(Syllabus by Estes, C.)

Commissioners' Opinion, Division No. 2.

Error from District Court, Carter county; Asa E. Walden, Judge.

Action by the American National Bank of Oklahoma City against the Ardmoreite Publishing Company. Judgment for defendant, from which plaintiff appeals. Affirmed.

Wm. G. Davisson, for plaintiff in error.

Sigler & Jackson, for defendant in error.

Opinion by ESTES, C. The American National Bank of Oklahoma City sued the Ardmoreite Publishing Company for $3,660 for breach of a lease contract. The bank alleged that the contract consisted of three letters. On April 28, 1923, the bank, by its president, wrote the publishing company:

"The writer has secured title from Mr. U. S. Joines to the property you now occupy with your publishing business in Ardmore. I understand that the rental is $300 per month and that it has been paid to May 1, 1923, and that you have a verbal lease running three or four years yet. I would thank you kindly to advise me what is your understanding of the oral agreement with Mr. Joines as to the time for which you should have the property at the above price. Also, kindly advise if I may draw on you the first of each month for the rent for that month."

This letter advises the change in ownership of the property and inquires whether the terms of the oral lease under which the publishing company was using the property were understood by the publishing company to be the same as understood by the bank. The inquiry as to drawing on the first of each month for the rent presumably has reference to rent under a continuation of the oral contract, since there was no written lease at that time. There is no offer made in this letter to lease the property to the publishing company by a written lease, although it may be inferred that the oral lease might be continued. On June 13, 1923, the publishing company wrote the bank:

"Please pardon the delay in answering your letter regarding the lease on the Ardmoreite building. It has been due to the fact that we have been making some changes here, and due to the further fact that I have been ill. Our understanding is, that this lease will be up three years from December. On this basis we will draw up a lease. If you want us to make out the lease let me know and I will attend to it at once. Our cashier to-day misunderstood instructions on your draft, and instead of taking up the draft, made out a check and mailed it to you. I am sorry this error occurred. It will not be necessary for you to draw drafts on us hereafter, as we will send you a check the first of each month."

The first paragraph of the second letter identifies the property, and it may be conceded to be sufficient description when considered with the first letter. In the second paragraph of the second letter, the publishing company confirms the understanding of the bank only as to the term, three years, of the oral lease. Then is found the first offer —to draw up a lease "on this basis", that is, for three years, and the inquiry whether the publishing company should "make out" the written lease. The last paragraph relates to a misunderstanding in the payment of the bank's draft for the rent under the oral agreement, and explains that thereafter the publishing company will send its check on the first of each month for the rent. This necessarily refers to payment of rent under the temporary arrangement or oral lease, because at that time there was none other. On June 15, 1923, the bank wrote the publishing company:

"We have your favor of June 18th, stating that your understanding of your lease is that it will be up three years from December, and we will take advantage of your offer and ask that you kindly draw up two copies of the lease and execute same and send them to us and we will execute one and return it to you."

After acknowledging the answer of the publishing company, this letter simply states, "We will take advantage of your offer and ask that you kindly draw up two copies of the lease," etc. What offer? The only offer made by the publishing company was to lease on the basis of a three-year term. The publishing company did not offer to execute a written lease even according to the other terms of the oral lease as understood by the bank. Necessarily the acceptance by the bank of the offer of the publishing company

was only of the offer in the very terms as made. Thus, we see the minds of the parties met only on two matters, the identity or description of the property and the life of a written lease to be prepared and executed. According to the language of these letters, it is not shown whether the rent should be paid at the beginning or at the end of each month, or otherwise. The letters do not disclose how, if at all, the lease might be forfeited for nonpayment of rent, or whether any repairs were to be made on the building and by whom. No other terms or conditions of the lease can be ascertained from these letters.

Under the statute of frauds, section 5034, C. O. S. 1921, an arrangement for the leasing for a longer period than one year of real property is invalid unless some note or memorandum thereof be in writing and subscribed by the party to be charged, or by his agent. Since the parent case, Halsell et al. v. Renfrow et al., 14 Okla. 674, 78 Pac. 118, it is well settled that such letters may constitute a valid contract, under said statute, provided they relate to the subject-matter and are so connected with each other that they may be said to fairly constitute one paper relating to the contract; that the letters, by reference to each other, must themselves disclose every material part of a valid contract, setting out the parties, the subject-matter, the price, description, terms and conditions, and leave nothing to rest in parol. In Baker v. Haswell & Taylor, 36 Okla. 429, 128 Pac. 1086, it is again held that all the terms of the contract, including the consideration to be paid, must be evidenced by such writing: that a complete contract must be contained in the writings. In other cases it is stated that such writings must contain the essential terms of the contract, Woodworth et al. v. Franklin, 85 Okla. 27, 204 Pac. 452. The question has arisen in actions for specific performance and otherwise, but such rule for determining the validity of a contract is the same. In McKnight v. Broadway Investment Co. (Ky.) 145 S. W. 377. at 383, the court applies this principle, under a similar statute, in a case involving the leasing of real estate. The court said:

"Read in the light most favorable to the appellee, the proposition was but an agreement to lease if satisfactory terms could be agreed upon. The time and rental alone are fixed absolutely by the writing. and there is not even a suggestion that the other terms and provisions had even been discussed, much less agreed upon at that time. The efforts of all parties up to August 28th had been directed toward arriving at an understanding as to the amount of the rental, and the proposition is no more than a statement that the rentals therein provided for will be acceptable when they are secured and the necessary details agreed upon. Until these necessary terms were agreed upon there was no lease. A writing, to be the basis of a contract. must be mutually binding upon the parties. Had appellee failed or refused to accede to any of the demands of appellant as to the provisions of the lease which he deemed necessary, appellant could not have compelled appellee to accept the lease. If appellee was not bound, clearly appellant could not be. Appellee may have been able financially to comply fully with the requirements of the provisions of the proposed lease, but appellant was not satisfied that it was; and, as the property belonged to appellant, he could not be required to part with it until terms and stipulation satisfactory to him had been agreed upon and complied with."

Said letters show only a treaty pending, and not a contract concluded, and have no effect to bind the publishing company, the party to be charged., because, from the letters, the essential terms and conditions of the contract cannot be ascertained.

The publishing company vacated the property thus owned by the bank in Ardmore soon after the exchange of said letters, paying $300 per month for the time it occupied the property, thus giving rise to this action against it for said damages by the declining rental value of the property. The trial court erroneously held that said letters constituted a valid contract and submitted the cause to the jury, resulting nevertheless in a verdict and judgment for the defendant publishing company. The bank duly appeals, assigning certain errors in instructions and otherwise, as grounds for reversal. The publishing company duly saved the record on the question disposed of above, and now insists that the judgment in its favor should not be disturbed on appeal, notwithstanding the error of the court committed against it, in holding that said letters constituted a valid lease. The successful party may, without appealing or assigning errors, save the judgment by showing that errors were committed against him below which, if corrected, will make the result reached below a right result. Voorhees v. Arnold (Iowa) 78 N. W. 795; State ex rel. Owens v. Consolidated Ind. School Dist. (Iowa) 176 N. W. 976; Muskogee Ref. Co. v. Waters-Pierce Oil Co., 89 Okla. 279. 215 Pac. 766.

It is clear that the payment of the said rent by the publishing company, under the oral agreement is not sufficient part per-

formance to take the case out of the statute of frauds, because such payments cannot be said to have been made with reference to the alleged written contract, the letters; but such payments were referable to the oral arrangement under which the publishing company was holding the premises at the time the bank became the owner. Let the judgment be affirmed.

By the Court: It is so ordered.

. Note.—See under (1) 27 C. J. p. 268, §318; p. 279. §330; 25 R. C. p. 640; 4 R. C. L. Supp. p. 1594. (2) 4 C. J. p. 696, §2600.