**FIDELITY BANK, N.A., formerly The Fidelity National Bank and Trust Company of Oklahoma City, Oklahoma, Appellant,**

v.

**STANDARD INDUSTRIES, INC., et al., Appellees.**

**No. 44694.**

Supreme Court of Oklahoma.

May 15, 1973.

Rehearing Denied Nov. 6, 1973.

**220**

Kerr, Davis, Irvine, Burbage & Foster by Ted D. Foster, Jr., and James A. Bagley, Jr., Oklahoma City, for appellant.

McAfee, Taft, Cates, Mark, Bond & Rucks by Peter B. Bradford, John E. Sargent, Jr., Oklahoma City, for appellees.

BARNES, Justice:

The defendants in error (defendants) are foreign corporations not authorized to do business in Oklahoma. Plaintiff in error (plaintiff) is a national banking corporation with its principal place of business in Oklahoma City. In the Oklahoma County action out of which this appeal arose, the plaintiff Bank sought recovery of damages against the three defendant foreign corporations on account of their alleged breach of a contract with plaintiff.

The only question presented in this appeal is whether or not service of process on the defendants in said action was authorized under this State's so-called "long-arm" statutes, Title 12 O.S.1971 and 1969 Supp., § 187, and Articles I and II of the "Uniform Interstate and International Procedure" (UIIP) Act, Title 12 O.S.1971 and 1969 Supp., §§ 1701.01–1702.03, both inclusive.

Our continued reference to the parties will be by their District Court party designations or as "Fidelity", "Standard", "New England" and "Knight".

From pleadings and other portions of the original record in this case, the following undisputed facts emerge. Knight is a Delaware corporation authorized to do business in Texas and is a wholly owned subsidiary of Standard, a New York corporation, which has common ownership and a New York City office with New England, a Connecticut corporation.

The plaintiff Bank owns or controls a parcel of real estate, with buildings and other improvements thereon, near the city of Vernon in Wilbarger County, Texas.

In December, 1968, plaintiff, through one of its vice-presidents referred to herein as "M.", entered into a written agreement with Knight, through its president, "P.", giving Knight, in consideration of its paying plaintiff $500.00, the "right of first refusal" of any offer plaintiff might make to lease or sell the Texas property.

Thereafter, in January, 1969, P. telephoned M., apparently in contemplation of an attempt by his employer, Knight, to lease and/or purchase the Texas property, for, in a letter dated January 20, 1969, addressed to M., at the plaintiff Bank, written on stationery bearing a Knight letterhead and showing its office address in Pennsylvania, P. referred to such a conversation "last Wednesday" and further stated, in part:

"As we discussed on the telephone I figure it will take $100,000 for land improvements, plumbing, and electrical work to be done on the buildings so as to make them ready for our use.

\*     \*     \*     \*     \*     \*

"The lease then should be based on whatever you are now asking plus the $100,000 additional, arranging terms and lease to fit a monthly budget figure of around $2,500 to $2,900 per month. The length of time on the lease can be whatever is necessary to meet the preceding requirements. As part of the lease terms we would like to show options to buy. Ideally at the end of the lease period we would like to be able to buy the building for a sum of $1 but this can be negotiated.

"I am attaching with this letter copies of financial reports on Standard Industries and New England Industries which undoubtedly will act as guarantor on the lease. Also enclosed are commercial bank references and the contact you requested.

"Would you please send to Mr. Morton Singer, Standard Industries, Inc. 120 Wall Street, New York, New York a copy of your bank statements so that we may have them on file.

"   *   *   *   *   *   *"

In reply to the above-quoted letter, M. wrote P. on January 27th expressing the opinion that Knight's "parent corporations", New England and Standard and their subsidiaries, "have sufficient credit strength to be acceptable on a long term lease   .   .   .   as far as we can tell   .   .   ." and setting forth suggestions as to certain terms to be included in the kind of a lease-purchase contract the two had been discussing. Among other things, M.'s letter stated:

"*   *   *   *   *   *

"We would agree to spend up to $100,000 for land improvements, plumbing and electrical work to make the buildings ready for your use. Under this proposal your company would have the option to buy the property at the end of five years for $236,000; at the end of ten years for $141,000; and to purchase the property at the end of fifteen years at a nominal sum.

"We would plan to draw a contract which would clearly outline that our total obligation for lease improvements would be to spend up to $100,000 and if additional funds are required, they would be provided by your company.

"   *   *   *   *   *   *"

Thereafter, Standard's vice-president and treasurer in New York, Mr. Singer, addressed a letter dated March 20th to M., in which he acknowledged receipt of M.'s January 27th letter to P., and stating ".   .   .   please be advised that this corporation and its affiliated corporation, the New England Industries, Inc. will guarantee a lease to be entered into by our wholly owned subsidiary, Knight Homes Corporation   .   .   .   under the following general terms: * * *." The letter then set forth certain terms identical, or consistent, with the suggestions set forth in the "reference" letter from M. to P., and closed by stating:

"This letter will serve as our intention to execute proper lease and other necessary documents to complete this transaction. Your attorney may contact Mr. George Cohen at 120 Wall Street, New York, New York, who will represent us as our counsel in this transaction."

Events that followed are described in plaintiff's petition as follows:

".   .   .   plaintiff, relying upon the conduct and representations of the defendants, their agents, servants and employees on the written representation so made by the defendants to plaintiff and believing them to be true, at defendants' request, caused to be prepared and tendered to defendants a written form of lease or purchase contract in accordance with the terms and conditions   .   .   ."

of the above-described correspondence, copies of which were attached thereto and were referred to individually as an "offer" and "acceptance", respectively, and collectively as a "contract". The petition also charged that, after partially performing said contract by taking "possession, custody and control" of the Texas property

above referred to, defendants declined to further carry out the parties' agreement.

Plaintiff's notification of the defendants' disinclination to proceed further was apparently given plaintiff by a letter dated June 3, 1969, from Standard's Mr. Singer to M., advising that one of Standard's other subsidiaries, Lancer Mobile Homes, Inc. (which defendants apparently had contemplated would use the Texas property), was "not in a position at this time to further expand their facilities . . . ." After expressing disappointment "at having to pass up the opportunity which the Vernon, Texas location affords . . .", Singer's letter further stated:

". . . we also recognize that we have obligations to your bank for out-of-pocket legal expenses incurred for the purpose of drafting a legal document under which we would have leased the Vernon, Texas premises.

"If you will kindly advise us of these costs, we are prepared to reimburse you."

A part of plaintiff's damages from defendants' alleged breach of the subject contract was described in its petition's prayer as "special damages, being the detriment and damages caused plaintiff by the defendants . . . as a result of plaintiff's agents, servants and employees spending many hours of labor and expenses, including attorneys' fees, in preparing and performing its part of the agreement, . . ."

In its written order sustaining the defendants' motion to quash the service of summons on them under the aforecited long-arm statutes, the District Court expressly recognized the "minimum contacts" doctrine enunciated in McGee v. International Life Insurance Company, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223, but found that there was "not sufficient contact with Oklahoma" in this case to authorize the court's "exercise" of "in personam jurisdiction with reference to the defendants, . . . ."

In its present appeal from said order, plaintiff contends that on the basis of the allegations of its petition and the undisputed facts established by the above-described exhibits, the totality of the defendants' contacts in Oklahoma was sufficient to give the Oklahoma Court in which it filed this action in personam jurisdiction of those foreign corporations under our aforecited long-arm statutes.

This State's Uniform Interstate and International Procedure (UIIP) Act, § 1701.-03, supra, authorizes Oklahoma courts to exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action or claim for relief arising from the person's:

"(1) transacting any business in this state;

"(2) contracting to supply services or things in this state;

\* \* \* \* \* \*

"(7) maintaining any other relation to this state or to persons or property including support for minor children who are residents of this state which affords a basis for the exercise of personal jurisdiction by this state consistently with the Constitution of the United States.

\* \* \* \* \* \*

We have held that this statute was intended to extend the jurisdiction of Oklahoma courts over nonresidents to the outer limits permitted by the United States Constitution's due process requirements. See Vemco Plating, Inc. v. Denver Fire Clay Company, Okl., 496 P.2d 117, 119, and B. K. Sweeney Co. v. Colorado Interstate Gas Co., Okl., 429 P.2d 759, 762.

In Vemco, supra, we cited Vinita Broadcasting Company, Inc. v. Colby (U.S.D.C., N.D., Okl.), 320 F.Supp. 902, in which the plaintiff sued a nonresident defendant for breach of a contract to perform legal services for it with reference to a hearing to be conducted by the Federal Communications Commission in Oklahoma and at which hearing said defendant was to appear and represent the plaintiff. There,

the Court tentatively regarded (saying: ". . . it is deemed for the present . . .") the defendant as having brought himself under § 1701.03(2), supra, by having contracted "to supply services . . . in this state," and said:

". . . the minimum contacts requirement of International Shoe Company v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95, 161 A.L.R. 1057, and the requirement that the subject contract have substantial connections with Oklahoma as announced in McGee v. International Life Insurance Company, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223, appear to be satisfied."

Here, if the copy of Mr. Singer's letter of June 30, 1969 ("Exhibit 'E'" attached to plaintiff's petition), is authentic, it appears that Knight's parent corporation recognized that, because of defendants' acts and representations, they had caused legal services to be rendered in Oklahoma and were therefore obliged to pay for same.

We do not purport to prejudge the merits of the present case and will not speculate or express any opinion as to whether or not plaintiff has alleged a cause of action or will be able to establish at a trial the cause of action it purports to have alleged. However, when all of the circumstances herein referred to are taken into consideration, we have no doubt that the defendants were transacting business in Oklahoma, and we agree with the plaintiff that the totality of contacts between plaintiff and defendants in Oklahoma was sufficient to justify the District Court in exercising jurisdiction over the defendants under the authority of Sections 187 and 1701.03, supra. It is therefore so held.

In accord with the foregoing, the order and/or judgment appealed from is hereby reversed, and this cause is remanded to the District Court for further proceedings not inconsistent herewith.

DAVISON, C. J., and IRWIN, BERRY, HODGES, LAVENDER, SIMMS and DOOLIN, JJ., concur.