David HOUGH d/b/a Hough Oilfield
Service, Appellee,

v.

Daniel LEONARD, Harold E. Burke,
and David McMillan, Appellants.

No. 75755.

Supreme Court of Oklahoma.

Sept. 21, 1993.

As Corrected Sept. 29, 1993.

**440**

John R. Couch, Jr., Stillwater, for appellants.

Jessie V. Pilgrim and Joy C. Lorance, Tulsa, for appellee.

KAUGER, Justice:

The only issue addressed [1] is whether the trial court properly exercised jurisdiction over the three Texas residents who entered into a contract in Oklahoma with an Oklahoma resident to perform services in Kansas. We find that it did. However, we also find that we must address a question of appellate procedure to ensure that all litigants are treated equitably and that all issues properly preserved, raised and briefed on appeal are addressed. *Johnson v. Wade,* 642 P.2d 255, 257 (Okla.1982), is hereby overruled to the extent that it provides that any party, whether "winner" or "loser" in the Court of Appeals, must petition for certiorari to ensure review of issues raised and briefed on appeal. Rules 3.14 and 3.15, 12 O.S.1991, Ch. 15, App. 3, Rules on Practice and Procedure in the Court of Appeals and on Certiorari to that Court, are hereby revised to include language providing that issues not presented in the petition for certiorari will not be considered by the Supreme Court. Provided, however, if the Court of Appeals did not decide

---

1. The certiorari paperwork also contains the appellant/non-residents' motion to tax costs and request for attorney's fees. This motion was filed after the Court of Appeals opinion was promulgated. Under our decision today, the non-residents are not prevailing parties entitled to the award of costs and attorney fees. 12 O.S.1991 § 929; 12 O.S.1991 § 928; 12 O.S.1991 § 936. Other issues to be determined are not reviewable in this Court. The cause is remanded to the Court of Appeals for determination of the adequacy of the jury instructions. This issue was briefed on appeal, but it was not addressed by that tribunal. *Athey v. Bingham,* 823 P.2d 347, 350–51 (Okla.1991) and discussion and accompanying footnotes, pp. 445–46, infra. At the same time, the Court of Appeals should consider the Oklahoma resident's counter-appeal requesting a review of the trial court's attorney fee award.

all of the properly preserved and briefed issues, the Supreme Court may—should it vacate the opinion of the Court of Appeals— address such undecided matters or it may remand the cause to the Court of Appeals for that Court to address such issues. These rules shall apply to this cause and prospectively to all petitions for certiorari filed thirty (30) days after final publication in the Oklahoma Bar Journal.[2]

## FACTS

The appellants, David Leonard, Harold Burke, and David McMillan (Leonard/Burke/McMillan/the non-residents) are engaged in the oil and gas business. The appellee, David Hough (Hough/the Oklahoma resident) owns and operates an oil field service company in Oklahoma. The oil well involved in this dispute is located in Kansas just across the Oklahoma–Kansas border. Leonard is the operator of the well, and Burke and McMillan are investors. McMillan also has recorded leasehold interests in certain property in Lincoln County, Oklahoma.[3]

While preparing the well for production in 1988, a temporary packer became lodged in the pipe above the production formation, making production impossible. After many unsuccessful attempts by Kansas firms to remove the packer, the non-residents hired an Oklahoma company to attempt removal. Hough was employed through the Oklahoma company as a subcontractor. This effort to unplug the well was unsuccessful. In the last week of May, 1989, McMillan, acting as

an agent for the non-residents[4] telephoned Hough from Texas, asking for a quotation of Hough's rates to provide further services.[5] The Oklahoma resident faxed his quotations to Texas. A few days later McMillan again telephoned Hough, in Oklahoma; and the parties entered into a contract for Hough to attempt removal of the packer from the Kansas well.

On the fourth day of operation, a dispute arose between the parties as to whether Hough was employed based on a daily rate or a fixed fee agreement.[6] As a result of this dispute, Hough left the job without retrieving the packer. The Oklahoma resident contends that he was prohibited from completing the job because McMillan threatened not to pay him and ordered him to leave. Subsequently, McMillan refused to pay for the services performed by Hough. The non-residents then contacted at least two other Oklahoma firms to ask about further services on the Kansas well.

Hough brought suit in Oklahoma against the non-residents to recover for payment of his services. The non-residents objected alleging that they were not subject to personal jurisdiction by the Oklahoma courts. A writ of prohibition was sought in this Court, and it was denied. After a jury trial, a verdict was returned in favor of the Oklahoma resident.[7] Temporary Panel XLVII of the Court of Appeals reversed, holding that Oklahoma lacked sufficient contacts to maintain personal jurisdiction over the non-residents. We granted certiorari on April 26, 1993, to deter-

2. Following the example of *Cox v. Smith*, 682 P.2d 228, 231 (Okla.1984), this Court has revised today Rules 3.14 and 3.15, 12 O.S.1991, Ch. 15, App. 3, Rules on Practice and Procedure in the Court of Appeals and on Certiorari to that Court. The text of these rules appears in the body of the opinion, see p. 445, infra. They shall also be published in the Oklahoma Bar Journal.

3. McMillan owns a working interest in at least 5 oil and gas wells in Lincoln County and receives about $200.00 per year from this interest.

4. It is undisputed that McMillan was acting as an agent for Leonard and Burke in respect to their interest in the Kansas well.

5. There is further dispute over the purpose of the initial telephone call. The Oklahoma resident asserts that McMillan contacted him to request a statement for labor and service rates to work on the well. The non-residents contend that the purpose of the call was to find out the location of the stuck packer and that Hough offered to retrieve the packer from the well.

6. The non-residents assert that the fixed fee agreement was a turnkey agreement where Hough would furnish all materials and undertake to perform all the work for a fixed price.

7. The award included $14,580.00 in damages and $8,021.74 for costs, pre-judgment interest, and attorneys' fees.

mine whether the trial court properly exercised jurisdiction over the non-residents.

## I.

## BECAUSE OF THE TOTALITY OF CONTACTS WITH OKLAHOMA, PERSONAL JURISDICTION WAS EXERCISED PROPERLY OVER THE NON–OKLAHOMA RESIDENTS.

■ The Oklahoma resident argues that Oklahoma can assert personal jurisdiction over a non-resident defendant absent physical presence of the person in Oklahoma. The non-residents insist that prior decisions of this Court which support Hough's position are distinguishable on their facts and, therefore, inapplicable.

■ The current Oklahoma long-arm statute 12 O.S.1991 § 2004(F) provides that "A court of this state may exercise jurisdiction on any basis consistent with the Constitution of this state and the Constitution of the United States." It is a codification of our holding in *Fields v. Volkswagen of America, Inc.*, 555 P.2d 48, 52 (Okla.1976), that the intent of the Oklahoma long-arm statute, is to extend the jurisdiction of Oklahoma courts over non-residents to the outer limits permitted by the Oklahoma Constitution [8] and by the due process clause [9] of the United States Constitution.[10] When a non-resident deliberately engages in significant activities in a forum state or creates continuing obligations between the non-resident and the residents of the forum, the non-resident submits to the jurisdiction of the state.[11] Jurisdiction may not be avoided merely because the non-resident did not physically enter the forum state. Jurisdiction under the long-arm statute is predicated on foreign state activity which results in forum state harm.[12] A non-resident who has purposefully directed activities at forum residents must present a compelling case that jurisdiction would be unreasonable,[13] or that the contacts were so insignificant that the exercise of in personam juris-

8. The Okla. Const. art. 2, § 2 provides:
   "All persons have the inherent right to life, liberty, the pursuit of happiness, and the enjoyment of the gains of their own industry."

9. U.S. Const. amend. 14, § 1 provides in pertinent part:
   "... No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or deny to any person within its jurisdiction the equal protection of the laws."

10. *Fields v. Volkswagen of America Inc.*, 555 P.2d 48, 52 (1976) involved the interpretation of 12 O.S.1971 § 1701.03(a)(4) which provides in pertinent part:
    "(a) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action or claim for relief arising from the person's:
    ... (4) causing tortious injury in this state by an act or omission outside this state if he regularly does or solicits business or engages in any other pertinent course of conduct, or derived substantial revenue from goods used or consumed or services rendered in this state ..."

11. *Burnham v. Superior Court of California*, 495 U.S. 604, 609–10, 110 S.Ct. 2105, 2109–10, 109 L.Ed.2d 631, 638–39 (1990) (California court had personal jurisdiction in divorce action over New Jersey resident who was served with process while temporarily in California for activities unrelated to suit; due process was not violated by exercise of the jurisdiction. Due process does not necessarily require states to adhere to unbending territorial limits on jurisdiction.); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475–77, 105 S.Ct. 2174, 2184–85, 85 L.Ed.2d 528, 543–44 (1985). The unilateral activity of the resident is not enough to exercise personal jurisdiction over a non-resident. *Hansen v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.E.2d 1283, 1298 (1958); *Architectural Bldg. Components Corp. v. Comfort*, 528 P.2d 307, 310 (Okla.1974). Foreseeability of causing an injury to another state alone is not sufficient to establish jurisdiction. The foreseeability that is critical to due process analysis is that the defendant's conduct and connection with the forum state is such that the person should reasonably anticipate being hailed into court there. *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 296–97, 100 S.Ct. 559, 566–67, 62 L.Ed.2d 490, 501 (1980). However, a state generally has a manifest interest in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors. So long as it creates a substantial connection with the forum, even a single act can support jurisdiction. *McGee v. International Life Ins. Co.*, 355 U.S. 220, 223, 78 S.Ct. 199, 201, 2 L.Ed.2d 223, 226 (1957).

12. *Fields v. Volkswagen of America Inc.*, see note 10 at 52, supra.

13. *Burger King Corp. v. Rudzewicz*, see note 11, supra.

diction would offend the traditional notions of substantial justice and fair play.[14]

The Oklahoma resident contends that our Oklahoma precedents as enunciated in *Gregory v. Grove*, 547 P.2d 381, 382 (Okla.1976); *Yankee Metal Prod. Co. v. District Court*, 528 P.2d 311, 313 (Okla.1974); and *B.K. Sweeney Co. v. Colorado Interstate Gas Co.*, 429 P.2d 759, 763 (Okla.1967), are controlling. In *Gregory*, we held that a totality of contacts between non-resident defendants and Oklahoma are to be considered in determining the sufficiency to exercise jurisdiction under long-arm service—this may include telephone communications and letters. In *B.K. Sweeney Co.*, we recognized: that the absence of multiple acts within the state are not necessarily fatal to the exercise of state power over a defendant; that a non-resident who engages in a single act or consummates a single transaction in a foreign state could be amenable to suit for damages arising out of that transaction; and that there exists no constitutional barrier to holding a non-resident subject to personal jurisdiction, irrespective of whether additional contacts in the state exist.

The Oklahoma resident also relies on *Yankee Metal Prod. Co.* for the proposition that when a non-resident actively participates in negotiations and initiates contact with the forum state, minimum contacts are satisfied. The *Yankee* Court found personal jurisdiction over a non-resident whose only contact with Oklahoma was through telephone and mail communications. The non-resident made initial contact with Oklahoma by telephone to request a quotation on specifications of materials.

The non-residents counter that *Anderson v. Shiflett*, 435 F.2d 1036, 1038 (10th Cir. 1971), and *Crescent Corp. v. Martin*, 443 P.2d 111, 117 (Okla.1968), support their assertion that Oklahoma lacks minimum contacts to exercise personal jurisdiction over the non-residents. Whether the activity of the defendant adequately satisfies due process depends upon the facts of the case.[15] However, we find that the non-residents may not rely on these cases, because they are factually distinguishable.

In *Crescent*, an Oklahoma resident entered into an employment contract for consulting services with a corporation not licensed or doing business in Oklahoma. Oklahoma did not have jurisdiction because the facts alleged in the record were insufficient to sustain jurisdiction. The record was silent as to where the contract of employment was made, accepted, or to be performed. The *Crescent* Court refused to infer facts that a party failed to allege in order to assert jurisdiction. Here, the record supports assertion of jurisdiction over the non-residents.

In *Anderson*, a Texas resident hired an Oklahoma architect to draw plans for a project. The contract was made in Texas and covered projects located in Texas. The only Oklahoma contact was that the architect drew some of the plans at his Oklahoma office.[16] Oklahoma lacked jurisdiction over

**14.** *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95, 102, 161 A.L.R. 1057, 1061 (1945); *Yery v. Yery*, 629 P.2d 357, 361 (Okla.1981); *Curtis v. CIA Machinery Inc.*, 571 P.2d 862, 865 (Okla.App. 1977). See also, *Shaffer v. Heitner*, 433 U.S. 186, 206–07, 97 S.Ct. 2569, 2581, 53 L.Ed.2d 683, 699 (1977) (All assertions of state jurisdiction, including in rem and quasi-in rem actions must be evaluated according to the minimum contacts standard.).

**15.** *Perkins v. Benguet Consol. Mining Co*, 342 U.S. 437, 445, 72 S.Ct. 413, 418, 96 L.Ed. 485, 492 (1952).

**16.** Temporary Panel XLVII of the Court of Appeals erroneously analogized *Anderson v. Shiflett*, 435 F.2d 1036, 1038 (10th Cir.1971); *Premier Corp. v. Newsom*, 620 F.2d 219, 222 (10th Cir. 1980); and *Helicopteros Nacionales De Colombia*

*v. Hall*, 466 U.S. 408, 418, 104 S.Ct. 1868, 1874, 80 L.Ed.2d 404, 413 (1984) to the facts of this case. In *Anderson*, the contract provided that the laws of the principle place of business of the architect were to govern. It is unclear from the facts, but can be inferred that the architect had an office in Texas; and his principal place of business was in Texas. In *Premier*, Colorado did not have jurisdiction over a party whose only contact with the forum state was through an incidental provision in the contract. The non-resident entered into a cattle purchasing and maintenance contract in which a provision allowed the cattle to be maintained anywhere, without direction from the non-resident. Subsequently, some of the cattle were kept in Colorado; and the state tried to assert jurisdiction. Here, the non-resident initiated, negotiated, and entered into the contract in Oklahoma with an Oklahoman, therefore the interest of Oklahoma is significant. *Helicopteros Nacionales De Colom-*

the service contract because it was a single isolated transaction which involved the unilateral activity of the Oklahoman.

Here, the non-residents have made the necessary minimum contacts with Oklahoma.[17] After exhausting Kansas firms, the non-residents hired an Oklahoma company, in which Hough was a subcontractor, to work on the well. Although it is disputed whether the non-residents called Hough for the purpose of obtaining advice, quotations, and services on the Kansas well, the jury returned a verdict in Hough's favor.[18] It is not disputed that a contract was entered into over the telephone in Oklahoma.[19] Regardless of who initiated the contact, the non-residents could have refused to enter into a contract and thereby alleviated the risk of defending a suit commenced in Oklahoma.[20] McMillan also has recorded leasehold interests in Oklahoma and relies on Oklahoma law to protect his interest in those leases. Finally, after dealing with Hough, the non-residents contacted at least two more Oklahoma companies to inquire about providing services on the Kansas well. While each individual contact made by the non-residents may not be sufficient standing alone to maintaining minimum contacts, the totality of the contacts are sufficient to exercise personal jurisdiction over the non-residents.[21]

bia v. Hall, see this note, supra, involved a state's attempt to assert personal jurisdiction over a non-resident not related to the cause of action. Here, the non-residents maintained significant contacts with Oklahoma in relation to services for the Kansas well.

*Helicopteros Nacionales De Colombia v. Hall,* see this note, supra, is also relied upon by the dissent. *Helicopteros* is distinguishable from the facts presented here in two important respects: 1) here, the non-residents initiated contacts with the Oklahoma resident—in *Helicopteros*, contacts were initiated by the Texas resident; and 2) the business sought to be conducted is actually located in Oklahoma in the instant cause—in *Helicopteros*, there was no place of business or service agent in Texas.

17. *Burger King Corp. v. Rudzewicz,* see note 11, supra. A corporation with principal offices in Miami and franchise operations throughout the United States brought an action in Florida against two of its franchisees, who were Michigan residents. Florida courts could assert personal jurisdiction over the non-residents, because they had established a substantial and continuing relationship with the Miami headquarters. This contact with the forum state through course of dealing and contract documents put the non-residents on fair notice that they would be subject to jurisdiction of the forum state.

18. See discussion, note 5, supra.

19. See, *Continental American Corp. v. Camera Controls Corp.,* 692 F.2d 1309, 1312–12 (10th Cir.1982) (Where non-resident placed orders with resident through telephone and mail and negotiated directly with resident for purchase price and condition of payment, contacts were sufficient to maintain personal jurisdiction.). But see, *Rambo v. American Southern Ins. Co.,* 839 F.2d 1415, 1420 (10th Cir.1988). The Court found that telephone calls and letters from a non-resident insurer did not establish minimum contacts with Oklahoma. In *Rambo,* the plaintiffs, Alabama residents, purchased automobile insurance through a Georgia corporation. They then moved to Texas and their automobile was stolen in California. After the insurance claim was filed, the plaintiffs moved to Oklahoma and filed suit against the Georgia corporation. Here, Hough was an Oklahoma resident throughout his dealings with the non-residents.

20. See, *Continental American Corp. v. Camera Controls Corp.,* see note 19 at 1314, supra. Non-resident could have refused to make a purchase from resident and thereby alleviated the risk of defending a suit in Kansas.

21. *Gregory v. Grove,* 547 P.2d 381, 383 (Okla. 1976); *Fidelity Bank N.A. v. Standard Indus. Inc.,* 515 P.2d 219, 223 (Okla.1973). Moreover, we cannot say that the non-residents will be seriously inconvenienced by having to defend the action in this state. *International Shoe v. Washington,* see note 14, 326 U.S. at 319–320, 66 S.Ct. at 159–160, 90 L.Ed. at 104, supra. Although convenience is not controlling, it is a factor to consider. *World–Wide Volkswagen Corp. v. Woodson,* see note 11, 444 U.S. at 293–296, 100 S.Ct. at 565–566, 62 L.Ed.2d at 499–500, supra. Oklahoma is conveniently located between the non-residents' office in Texas and the Kansas well. See, *Town of Haverhill v. City Bank & Trust Co.,* 119 N.H. 409, 402 A.2d 185, 188 (N.H.1979).

## II.

**AFTER THE EFFECTIVE DATE OF THE RULES PROMULGATED HEREIN AND PUBLISHED IN THE OKLAHOMA BAR JOURNAL, ISSUES NOT PRESENTED IN THE PETITION FOR CERTIORARI WILL NOT BE CONSIDERED BY THE SUPREME COURT. PROVIDED, HOWEVER, IF THE COURT OF APPEALS DID NOT DECIDE ALL OF THE PROPERLY PRESERVED AND BRIEFED ISSUES, THE SUPREME COURT MAY—SHOULD IT VACATE THE OPINION OF THE COURT OF APPEALS—ADDRESS SUCH UNDECIDED MATTERS OR IT MAY REMAND THE CAUSE TO THE COURT OF APPEALS FOR THAT COURT TO ADDRESS SUCH ISSUES.**

The Oklahoma resident prevailed in the trial court. The non-residents appealed raising two issues—the minimum contacts question settled here and error relating to the propriety of giving certain jury instructions and refusing others. Because the Court of Appeals reversed on the minimum contacts issue, it did not address the questions regarding jury instructions. The non-residents prevailed under the Court of Appeals' opinion. They did not petition for certiorari nor did they address the instructions issue in their response to the Oklahoma resident's petition for certiorari.

Generally, this Court has interpreted Rule 3.15 as limiting "reviewable issues" to those issues raised in the petition for certiorari or the response thereto. However, the rule is ambiguous and potentially misleading to appellate advocates. It is somewhat incongruous to require the prevailing party to petition for certiorari. Because an inequity exists in causes in which Court of Appeals' opinions are vacated resulting in "winners" in that Court becoming "losers" in this one if all issues properly raised and briefed in the

appeal have not been addressed, we today revise Rules 3.14 and 3.15, 12 O.S.1991, Ch. 15, App. 3, Rules on Practice and Procedure in the Court of Appeals and on Certiorari to that Court.[22] These rules shall apply to this cause and prospectively to all petitions for certiorari filed thirty (30) days after final publication in the Oklahoma Bar Journal. *Johnson v. Wade*, 642 P.2d 255, 257 (Okla. 1982), is hereby overruled to the extent that it provides that any party, whether "winner" or "loser" in the Court of Appeals, must petition for certiorari to ensure review of issues raised and briefed on appeal.

■ Pursuant the authority vested in this Court by the Okla. Const. art. 7, § 5, Rules 3.14 and 3.15 are hereby revised. Revised Rule 3.14, 12 O.S.1991, Ch. 15, App. 3, Rules on Practice and Procedure in the Court of Appeals and on Certiorari to that Court, effective thirty (30) days after final publication in the Oklahoma Bar Journal shall provide:

### RULE 3.14 THE PETITION FOR CERTIORARI—CONTENTS

A. An application for certiorari shall be by petition only which shall contain the following to be set forth in the order here indicated:

... (3) An outline of the reasons for review as suggested in Rule 3.13, expressed in the terms and circumstances of the case but without unnecessary detail. The statement of a question presented will be deemed to include every subsidiary question fairly comprised therein.

.   .   .   .   .

Revised Rule 3.15, 12 O.S.1991, Ch. 15, App. 3, Rules on Practice and Procedure in the Court of Appeals and on Certiorari to that Court, effective thirty (30) days after final publication in the Oklahoma Bar Journal shall provide:

petition for certiorari to review Court of Appeals decision will not be considered."
However, in *Handy v. City of Lawton*, 835 P.2d 870, 874 (Okla.1992); and *Athey v. Bingham*, see note 1, supra, causes were remanded to the Court of Appeals for adjudication of assignments of error remaining unreviewed.

**22.** *Johnson v. Wade*, 642 P.2d 255, 257 (Okla), specifically provides that:
"Any party who desires this Court to review a decision of the Court of Appeals, or any portion thereof, be he "winner" or "loser" in the Court of Appeals and must petition for rehearing in the Court of Appeals and must petition this Court for certiorari. Issues not raised in

**RULE 3.15 ORDER GRANTING CERTIORARI**

A. When a petition for writ of certiorari to review a decision of the Court of Appeals is granted, an order shall be entered to that effect. Issues not presented in the petition for certiorari will not be considered by the Supreme Court. Provided, however, if the Court of Appeals did not decide all of the properly preserved and briefed issues, the Supreme Court may—should it vacate the opinion of the Court of Appeals—address such undecided matters or it may remand the cause to the Court of Appeals for that Court to address such issues....

## CONCLUSION

The non-residents have maintained significant contacts with Oklahoma regarding services on the Kansas well. They initiated contact and negotiated a contract by telephone in Oklahoma with an Oklahoman. McMillan relies upon Oklahoma law to protect his property interest in Oklahoma, and the non-residents have called upon the services of other Oklahoma firms in connection with the Kansas well. Because the totality of the contacts with Oklahoma are sufficient to meet the definition of minimum contacts, the trial court properly exercised personal jurisdiction over the non-residents.

The Okla. Const. art. 5, § 51 [23] preserves equality between citizens who are similarly situated.[24] Today, we overrule in part *Johnson v. Wade*, 642 P.2d 255, 257 (Okla.1982) and revise Rules 3.14 and 3.15, 12 O.S.1991, Ch. 15, App. 3, Rules on Practice and Procedure in the Court of Appeals and on Certiorari to that Court, to ensure that result. After the effective date of the rules promulgated herein and published in the Oklahoma Bar Journal,[25] issues not presented in the petition for certiorari will not be considered by the Supreme Court. Provided, however, if the Court of Appeals did not decide all of the properly preserved and briefed issues, the Supreme Court may—should it vacate

the opinion of the Court of Appeals—address such undecided matters or it may remand the cause to the Court of Appeals for that Court to address such issues.

The trial court is not affirmed. The opinion of the Court of Appeals is vacated; and the cause is remanded for a decision of the errors asserted in the brief on appeal relating to the jury instructions given and those denied.[26]

**CERTIORARI PREVIOUSLY GRANTED; COURT OF APPEALS OPINION VACATED; CAUSE REMANDED TO THE COURT OF APPEALS WITH INSTRUCTIONS.**

LAVENDER, V.C.J., and HARGRAVE, ALMA WILSON and SUMMERS, JJ., concur.

SIMMS, J., concurs in part II, dissents to part I.

HODGES, C.J., and OPALA and WATT, JJ., concur in part and dissent in part.

HODGES, Chief Justice, with whom SIMMS, J., joins, concurring in part and dissenting in part:

I respectfully dissent to the majority's resolution of the issue of jurisdiction.

As to the issue of jurisdiction, in *Hanson v. Denckla*, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958), at page 253, 78 S.Ct. at pages 1239–40 the United States Supreme Court set out the following rule:

The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State. The application of that rule will vary with the quality and nature of the defendant's activity, but it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities with the forum State, thus invoking the benefits and protections of its laws....

23. The Okla. Const. art. 5, § 51 provides: "The Legislature shall pass no law granting to any association, corporation, or individual any exclusive rights, privileges, or immunities within this State."

24. *Kimery v. Public Serv. Co.*, 622 P.2d 1066, 1071 (Okla.1980).

25. *Vanderpool v. State*, 672 P.2d 1153, 1157 (Okla.1983).

26. Id.

The only acts that the defendants, who are not residents of Oklahoma, committed in Oklahoma were to call Mike Jones to hire him to remove a stuck packer from an oil and gas well in Kansas. Mr. Jones then contacted the plaintiff to whom he subcontracted the work. Later, one of the defendants called the plaintiff requesting a bid for work on the same well. The plaintiff sent the bid to the defendants. The defendants then called to accept.

The only other contact of the defendants with Oklahoma is that one of the defendants owns interests in oil and gas leases in Oklahoma. It is undisputed that these interests are not a part of this suit. Without more, the ownership of property in the State does not support this State's jurisdiction over litigation unrelated to the property. *See Schaffer v. Heitner*, 433 U.S. 186, 209, 97 S.Ct. 2569, 2582, 53 L.Ed.2d 683 (1977). After reviewing all the facts, I must agree with the Court of Appeals' finding that the district court lacked jurisdiction over the defendants.

SIMMS, Justice, concurring in part, dissenting in part:

I dissent to Part I for the reasons set forth by the Supreme Court of the United States in *Helicopteros Nacionales De Colombia, S.A. v. Hall*, 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984), and join Chief Justice Hodges in his writing. I also concur in Part II of the majority opinion.

OPALA, Justice, with whom WATT, J., joins, concurring in part and dissenting in part.

While I concur insofar as the opinion holds that the trial court correctly exercised *in personam* jurisdiction over the non-residents, I dissent from the court's revision of Rule 3.15.[1] Today's amendment *relieves the certiorari respondent of telling this court what would remain to be reviewed in the case if certiorari overturned the Court of Appeals' pronouncement on some dispositive issue.* The court should *never* reach for consideration or remand *any* issue left unaddressed by the Court of Appeals' jurisprudence *unless* the certiorari respondent *argues*—either in the response to the petition[2] *or in a brief on certiorari*[3]—*that the issue which went unresolved by the intermediate court would, if decided, make the Court of Appeals' result correct.*[4] *My counsel today is against giving respondents the benefit of arguments they did not raise in the certiorari process and rewarding their silence.*

## I.

**OKLAHOMA'S REVIEW ON CERTIORARI—WHICH IS GRANTED ONLY FOR *SPECIAL AND IMPORTANT REASONS*—SHOULD BE AS NARROW AS THAT BY THE UNITED STATES SUPREME COURT**

In the exercise of its certiorari jurisdiction, the United States Supreme Court *does not*

---

1. The text of Rule 3.15, 12 O.S.1991, Ch. 15, App. 3, Rules on Practice and Procedure in the Court of Appeals and on Certiorari to that Court, *which the court's opinion adopts today* is:
   "When a petition for writ of certiorari to review a decision of the Court of Appeals is granted, an order shall be entered to that effect. Issues not presented in the petition for certiorari will not be considered by the Supreme Court. *Provided, however, if the Court of Appeals did not decide all of the properly preserved and briefed issues, the Supreme Court may—should it vacate the opinion of the Court of Appeals—address such undecided matters or it may remand the cause to the Court of Appeals for that Court to address such issues.* The case will then be decided on the reviewable issue or issues presented in the briefs theretofore filed, unless for good cause the filing of additional briefs be then allowed." [Emphasis supplied.]

2. Rule 3.14 E, 12 O.S.1991, Ch. 15, App. 3, Rules on Practice and Procedure in the Court of Ap-

peals and on Certiorari to that Court, provides in pertinent part:
   "The petition shall be served upon the respondent who may within ten (10) days thereafter file and serve upon the petitioner *an answer in opposition to petition which shall be succinct and shall not exceed in length, ten ... pages.*" [Emphasis supplied.]

3. When a petition for certiorari has been granted, *this court may permit the parties to file additional briefs*. *See* Rule 3.15, 12 O.S.1991, Ch. 15, App. 3, Rules on Practice and Procedure in the Court of Appeals and on Certiorari to that Court, *supra* note 1.

4. A lower court's judgment may be affirmed even though the *wrong reasons* were given for the decision. *Hill v. Young*, 134 Okl. 99, 274 P. 24, 25 (1928).

*use the process to dispense individual relief.* Rather, it devotes its scarce judicial resources to deciding important questions and to achieving uniformity in the body of federal law.[5] Oklahoma's certiorari review should remain *similarly structured.*[6] *In this state's two-tiered review system error-correcting is the mission of the court of initial review while this court's responsibility stands confined to developing the law through a prudent use of cutting-edge certiorari jurisprudence.*[7]

*Today's rule revision will transform certiorari into bringing whole cases for error-correcting.* An adoption of my counsel would preserve a narrow scope of certiorari review

to facilitate this court's unique law-development role.

## II.

## ISSUES RAISED ON APPEAL AND LATER ABANDONED ON CERTIORARI SHOULD NOT BE REACHED FOR REVIEW

The Nation's highest court ordinarily will *not* consider questions the parties have *not raised*[8] nor those which have been *incorrectly presented.*[9] This court also has refused to assume counsel's responsibility for advocating the cause.[10] Issues on certiorari are framed by the petition for that writ.[11] *An*

---

**5.** *See* Wright, Miller, Cooper & Grossman, FEDERAL PRACTICE AND PROCEDURE, JURISDICTION AND RELATED MATTERS § 4004 at 517 (1977). To conserve its scarce judicial resources the United States Supreme Court sometimes *limits its review to specified questions,* although *restricted grants* are a relatively small percentage of the total cases reviewed. WRIGHT, *supra* at 516.

Although this court *seldom* limits certiorari review to *predesignated issues,* parties should not mistakenly assume that it will take over counsel's role of advocacy. *We have refused to consider issues briefed but not raised in the petition for certiorari. See* the authorities *infra* note 11.

**6.** 20 O.S.1991 § 30.1; Rule 3.13 A, 12 O.S.1991, Ch. 15, App. 3, Rules on Practice and Procedure in the Court of Appeals and on Certiorari to that Court. The pertinent terms of § 30.1 are:

· "A decision of the Court of Appeals *may be reviewed by the Supreme Court if a majority of its Justices direct that certiorari be granted ....*" [Emphasis supplied.]

The pertinent terms of Rule 3.13 A are:

"A review of an opinion of the Court of Appeals in the Supreme Court on writ of certiorari as provided in 20 O.S.1971 § 30.1 is a matter of *sound judicial discretion* and will be granted only when there are *special and important reasons* and a *majority of the justices direct that certiorari be granted ....*" [Emphasis supplied.]

**7.** The pertinent terms of Rule 3.13, Rules on Practice and Procedure in the Court of Appeals and on Certiorari to that Court, 12 O.S.1991, Ch. 15, App. 3 are:

"*The following,* while neither controlling nor fully measuring the Supreme Court's discretion, *indicate the character of reasons which will be considered:*

"(1) Where the Court of Appeals has decided a question of substance not heretofore determined by this court;

"(2) Where the Court of Appeals has decided a question of substance in a way probably not in

accord with applicable decisions of this court or the Supreme Court of the United States;

"(3) Where a division of the Court of Appeals has rendered a decision in conflict with the decision of another division of that court;

"(4) Where the Court of Appeals has so far departed from the accepted and usual course of judicial proceedings or so far sanctioned such procedure by a trial court as to call for the exercise of this court's power of supervision." [Emphasis supplied.]

**8.** The importance of a brief in opposition to a petition for a writ of certiorari is twofold: it *not only assists the court in the exercise of its discretionary jurisdiction, but also helps to frame the issues that properly would be before the court if certiorari were to be granted. See* U.S.Sup.Ct. Rule 15, 28 U.S.C.A.

**9.** Illustrative of the United States Supreme Court's *general rule* against consideration of questions not, or not correctly, raised by the parties are *Tacon v. Arizona,* 410 U.S. 351, 352, 93 S.Ct. 998, 999, 35 L.Ed.2d 346 (1973) (*issues raised for the first time in that court*); *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 148 n. 2, 90 S.Ct. 1598, 1602 n. 2, 26 L.Ed.2d 142 (1970) (*issues which are neither raised before nor considered by the United States Court of Appeals*); *Andrews v. Louisville & N.R. Co.,* 406 U.S. 320, 326, 92 S.Ct. 1562, 1565, 32 L.Ed.2d 95 (1972) (*constitutional questions not raised by the parties*). The rule is not completely without exception. *See Silber v. United States,* 370 U.S. 717, 718, 82 S.Ct. 1287, 1288, 8 L.Ed.2d 798 (1962). *See also,* ANNOTATION, WHAT ISSUES WILL THE SUPREME COURT CONSIDER, THOUGH NOT, OR NOT PROPERLY, RAISED BY THE PARTIES, 42 L.Ed.2d 946 (1975).

**10.** *See, e.g., Mead v. Mead,* Okl., 301 P.2d 691, 694 (1956).

**11.** *Cunningham v. Public Service Co.,* Okl., 834 P.2d 974, 979 (1992) (Opala, J., dissenting); *Matter of S.C.,* Okl., 833 P.2d 1249, 1252 (1992);

issue tendered on appeal but not reasserted on certiorari stands abandoned.[12] An abandoned issue is sapped of potency for viable judicial relief; it will not be reached for resolution sua sponte.[13]

Today's rule revision creates a double standard. What is *required* of the petitioner is *relaxed* for certiorari respondents who fail to protect their client against the always predictable contingency that the Court of Appeals' opinion might be vacated and issues which were not reached by the intermediate tribunal would go unreviewed. Although an aggrieved party's certiorari *petition* supersedes all prior pleas for corrective relief on review,[14] today's revised rule bestows the legally unwarranted largesse of affording *respondent sua sponte review of all issues unaddressed by the Court of Appeals, whether tendered or untendered to this court by the losing litigant's advocacy.[15] The same standards should be applied to all parties; questions not reasserted on certiorari must stand beyond the reviewing cognizance of either court.*

Rules of adversary advocacy must apply with the same force at every stage of review.[16] The appellant initially bears the duty to overcome the presumption of correctness that attaches to the trial court's decision;[17] the victorious appellee bears the burden of defending his earlier *nisi prius* triumph.[18] *Because the very same presumption of correctness is attached to an intermediate court's decision, a certiorari respondent bears the burden of defending the favorable pronouncement.* Appellate courts do not engage in a search for some theory which has not been raised by counsel to find a valid ground *for reversal of a nisi prius judgment.[19]* A law-developing court should never burden itself with post-decisional screening duties to run a rescue mission for lawyers who, for lack of foresight, failed to press conditional or alternative arguments to advocate the resulting correctness of intermediate court's jurisprudence.[20]

Although without a timely-filed certiorari petition of its own, *no* party will be permitted

---

*Matter of D.D.F.*, Okl., 801 P.2d 703, 709 (1990); *Ford v. Ford*, Okl., 766 P.2d 950, 952 n. 1 (1989). *See Mitchell v. Ford Motor Credit Co.*, Okl., 688 P.2d 42, 44 (1984).

**12.** *Cunningham, supra* note 11 at 979; *Matter of S.C., supra* note 11 at 1252; *Matter of D.D.F., supra* note 11 at 709; *Ford, supra* note 11 at 952 n. 1.

**13.** *Ford, supra* note 11 at 952 n. 1.

**14.** *See Cunningham, supra* note 11 at 980.

**15.** The Supreme Judicial Court of Massachusetts, whose appellate structure is not unlike our own, has sounded a *warning* that a prudent party who prevails in the appellate court should, on certiorari, consider his/her position to be essentially the same as that before the intermediate court. Those who do not *address in the response or brief all successive or alternative contentions incur a clear risk that the unaddressed issues will not be reached for consideration. Ford v. Flaherty,* 364 Mass. 382, 305 N.E.2d 112, 116 (1973).

**16.** An *exception* to strict compliance with the rules of appellate advocacy is sometimes made for *public-law controversies*, where this court is free to determine the cause as it sees fit based upon the law and the fact. *Simpson v. Dixon,* Okl., 853 P.2d 176, 187 n. 55 (1993); *Reynolds v. Special Indem. Fund,* Okl., 725 P.2d 1265, 1270 (1986); *Burdick v. Independent School Dist.,* Okl.,

702 P.2d 48, 54 (1985); *McCracken v. City of Lawton,* Okl., 648 P.2d 18, 21 n. 11 (1982); *Application of Goodwin,* Okl., 597 P.2d 762, 764 (1979); *Special Indemnity Fund v. Reynolds,* 199 Okl. 570, 188 P.2d 841, 842 (1948). *No public-law issues are raised by the case here for review.*

**17.** *Peters, infra* note 25 at 331; *Mead, supra* note 10 at 694; *Douglas v. Martin,* 204 Okl. 264, 228 P.2d 1021, 1023 (1951); *Wilhite v. Brin,* 178 Okl. 339, 62 P.2d 1240, 1241 (1936).

**18.** Rule 1.14, Rules of Appellate Procedure in Civil Cases, 12 O.S.1991, Ch. 15, App. 2, commands that *appellee shall file a response to the petition in error. An answer brief is required by Rule 1.28.* While reversal of a *nisi prius* decision is never *automatic* for failure to file an answer brief, *if the appellant has overcome the presumption of correctness of the trial court's decision, the burden of its defense shifts to appellee. See, e.g., City of Tulsa v. Stroud,* 181 Okl. 525, 75 P.2d 434, 435 (1938); *Buellesfeld v. Swaim,* 66 Okl. 302, 168 P. 1166 (1917). *See also, Needham v. Hays,* Okl., 431 P.2d 441, 442 (1967).

**19.** *See Mead, supra* note 10 at 694.

**20.** *This court's rescue missions for deficient lawyers have met with my disapproval in the past. See, e.g., Bane v. Anderson, Bryant & Co.,* Okl., 786 P.2d 1230, 1239 (1990) (Opala, J., concurring in part and dissenting in part.)

to secure vacation or modification relief, any party may *defend against* another party's quest for certiorari by pressing those errors in the Court of Appeals' pronouncement which, when rectified, would sustain that court's decision *as correct in its result.*[21] A *certiorari respondent who brings no counter-petition stands in a posture restricted to the defense of the relief granted, but nothing prevents that party from offering arguments in support of the relief's correctness.*[22]

To the extent *Johnson v. Wade*[23] teaches that any party, whether "winner" or "loser" in the Court of Appeals, must *petition for certiorari* to ensure review of issues raised and briefed on appeal, it is concededly *overbroad.* A *counter-petition for certiorari* is required *only* if the respondent seeks *to enlarge its own rights or diminish those declared by the decision in favor of the petitioner.*[24] The court paints with too broad a brush when it overrules *Wade in toto by fashioning a new rule that brings up an entire case.*

This court has long been committed to the principle that *claims to error for which there is no support in argument or authority are deemed abandoned.*[25] Today's opinion *sub silentio* carves out an exception for certiorari respondents. The revised rule announces the court's willingness to comb *sua sponte* through the record and briefs for any issues left unaddressed by the initial process of review.

**SUMMARY**

In sum, I remain committed to the traditional rules of common-law appellate advocacy. These require an appellee-respondent to defend against an appellant-petitioner's effort to pierce the law's presumption of correctness which attaches to *every* pronouncement of *every* court.[26] Today's rule revision throws to the wind all time-honored safeguards of orderly process by inaugurating a reward regime for an advocate's silence. The court unmistakably pledges to the Bar that it will *sua sponte search for and consider issues which certiorari respondents have failed to press.* I must recede from this notion. I would require the parties—who were successful in the Court of Appeals and who have no reason to seek certiorari review—to identify all those issues left unaddressed by the Court of Appeals which remain viable and should be considered either by this court or be reviewed on remand. Certiorari must be kept as a *narrow, issue-focused process* rather than be transformed into a *whole case review.*

---

21. *Woolfolk v. Semrod,* Okl., 351 P.2d 742, 745 (1960); *see Oklahoma Water Resources Bd. v. Texas County,* Okl., 711 P.2d 38, 67 n. 48 (1984); *Matter of Estate of Bradshaw,* Okl., 606 P.2d 578, 580 (1980); *Nilsen v. Tenneco Oil Co.,* Okl., 614 P.2d 36, 39 (1980); *Short v. Guy Nall Trucking Co.,* Okl., 442 P.2d 497, 499 (1968); *Great American Reserve Ins. Co. of Dallas v. Strain,* Okl., 377 P.2d 583, 589 (1963); *American Nat. Bank v. Ardmoreite Pub. Co.,* 123 Okl. 225, 253 P. 81, 83 (1927); *Bruner v. Eaton,* 121 Okl. 209, 249 P. 734, 735 (1926); *Muskogee Refining Co. v. Waters–Pierce Oil Co.,* 89 Okl. 279, 215 P. 766, 767 (1923). *See also,* ANNOTATION, EFFECT OF PARTY'S FAILURE TO CROSS-APPEAL ON SCOPE OF APPELLATE REVIEW AS TO CONTENTIONS OF A PARTY RELATING TO JUDGMENT BELOW—SUPREME COURT CASES, 63 L.Ed.2d 911 (1980).

22. *May v. May,* Okl., 596 P.2d 536, 540 (1979).

23. Okl., 642 P.2d 255, 257 (1982).

24. *See* the authorities *supra* notes 21 and 22.

25. *Hadnot v. Shaw,* Okl., 826 P.2d 978, 981 (1992); *Holbert v. Echeverria,* Okl., 744 P.2d 960, 962 n. 4 (1987); *Messler v. Simmons Gun Specialties, Inc.,* Okl., 687 P.2d 121, 129 n. 11 (1984); *Peters v. Golden Oil Co.,* Okl., 600 P.2d 330, 331 (1979); *Harley v. Jobe,* 207 Okl. 296, 249 P.2d 468, 469 (1952); *John Deere Plow Co. v. Owens,* 194 Okla. 96, 147 P.2d 149, 153 (1944).

26. *See* the authorities *supra* notes 4 and 10.